State of Nebraska, appellee, v.
Joshua D. Ballew, appellant.
___ N.W.2d ___

Filed August 14, 2015.    No. S-13-1065.

1.  **Criminal Law: Motions for New Trial: Appeal and Error.** In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed.

2.  **Double Jeopardy: Convictions: Appeal and Error.** Whether two convictions result in multiple punishments for the same offense for double jeopardy purposes presents a question of law, on which an appellate court reaches a conclusion independent of the court below.

3.  **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

4.  **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court will review for clear error the factual findings underpinning a trial court's hearsay ruling and review de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds.

5.  **Constitutional Law: Due Process: Witnesses: Appeal and Error.** An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution and reviews the underlying factual determinations for clear error. The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law.

6.  **Judgments: Appeal and Error.** When issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.

7. **Double Jeopardy.** The Double Jeopardy Clauses of both the federal and Nebraska Constitutions protect against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.

8. **Double Jeopardy: Sentences: Proof.** Under *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or one is whether each provision requires proof of a fact which the other does not. This test, otherwise known as the "same elements" test, asks whether each offense contains an element not contained in the other. If not, they are the same offense and double jeopardy bars additional punishment and successive prosecution. If so, they are not the same offense and double jeopardy is not a bar to additional punishment.

9. **Criminal Law: Statutes: Double Jeopardy.** In applying *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), to separately codified criminal statutes which may be violated in alternative ways, only the elements charged in the case at hand should be compared in determining whether the offenses under consideration are separate or the same for purposes of double jeopardy.

10. **Rules of Evidence: Impeachment: Prior Statements.** Prior inconsistent statements are admissible as impeachment evidence, but they are not admissible as substantive evidence unless they are otherwise admissible under the Nebraska Evidence Rules.

11. **Trial: Testimony: Prior Statements: Appeal and Error.** The trial court has considerable discretion in determining whether testimony is inconsistent with prior statements, and absent an abuse of that discretion, the trial court's ruling will be upheld on appeal.

12. **Rules of Evidence: Hearsay: Proof.** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

13. **Criminal Law: Constitutional Law: Due Process: Rules of Evidence.** Whether rooted directly in the Due Process Clause of the 14th Amendment or in the Compulsory Process or Confrontation Clauses of the 6th Amendment, the federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. However, the accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.

14. **Criminal Law: Constitutional Law: Trial: Witnesses.** The right of a person accused of a crime to confront the witnesses against him or her is a fundamental right guaranteed by the 6th Amendment to the U.S. Constitution, as incorporated in the 14th Amendment, as well as by article I, § 11, of the Nebraska Constitution. But the right is not unlimited, and only guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent the defense may wish.

15. **Trial: Testimony.** When the object of cross-examination is to collaterally ascertain the accuracy or credibility of the witness, the scope of the inquiry is ordinarily subject to the discretion of the trial court.

16. **Constitutional Law: Trial: Juries: Witnesses.** An accused's constitutional right of confrontation is violated when either (1) he or she is absolutely prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness or (2) a reasonable jury would have received a significantly different impression of the witnesses' credibility had counsel been permitted to pursue his or her proposed line of cross-examination.

Appeal from the District Court for Lancaster County: Stephanie F. Stacy, Judge. Affirmed.

Jessica L. Milburn for appellant.

Jon Bruning, Attorney General, and Stacy M. Foust for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.
## I. NATURE OF CASE
Joshua D. Ballew appeals his convictions and sentences in the district court for Lancaster County for two counts of first degree assault, two counts of second degree assault, and two counts of use of a deadly weapon to commit a felony. Ballew claims that the district court erred when it overruled his motion for a new trial, which motion was based on an alleged double jeopardy violation and on allegedly erroneous evidentiary rulings. We affirm Ballew's convictions and sentences.

## II. STATEMENT OF FACTS

Ballew attended a party at the house of Marshall Mock and his roommates. The party began on the night of March 9, 2012, and continued into the early morning hours of March 10. At around 1:30 a.m., a fight broke out in the front yard of the house. Among those who became involved in the fight were Mock and a guest, Tyler Waddell. Both Waddell and Mock were stabbed. Police responding to calls found Ballew in the area near Mock's house and took him into custody after noting that he fit the description of the suspect and that his right hand was bloody.

The State charged Ballew with two counts of first degree assault in violation of Neb. Rev. Stat. § 28-308 (Cum. Supp. 2014), two counts of second degree assault in violation of Neb. Rev. Stat. § 28-309 (Cum. Supp. 2014), and two counts of use of a deadly weapon to commit a felony in violation of Neb. Rev. Stat. § 28-1205(1) (Cum. Supp. 2014). Ballew was charged with one count of each offense with respect to each of the two victims—Waddell and Mock. The State also charged Ballew with being a habitual criminal.

With respect to each charge of first degree assault, the State alleged that Ballew had intentionally or knowingly caused serious bodily injury to the victim, and with respect to each charge of second degree assault, the State alleged that Ballew had intentionally or knowingly caused bodily injury to the victim with a dangerous instrument or that he had recklessly caused serious bodily injury to the victim with a dangerous instrument. At the close of evidence at trial, the court sustained the State's motion to amend the second degree assault charges to conform to the evidence by removing the language alleging that Ballew had recklessly caused serious bodily injury with a dangerous instrument. Therefore, the second degree assault charges were presented to the jury as alleging that Ballew had intentionally or knowingly caused bodily injury to each victim with a dangerous instrument.

The evidence the State presented at trial included testimony by four witnesses who identified Ballew as the person

involved in the stabbings. These witnesses included the victims, Mock and Waddell, as well as Mikaela Perry and Blake Klapperich.

Mock testified that during the party, he heard screaming from outside and went to see what was happening. He saw people on the porch screaming at two men on the sidewalk. Mock identified Ballew as one of the men on the sidewalk, and he testified that he had seen Ballew in the house earlier that night. Mock went to the sidewalk to ask the men to leave. As Mock was talking with Ballew and the other man, the other man ran past Mock toward the house and grazed Mock's shoulder. As Mock turned to see what the other man was doing, he felt himself being struck in the back. Mock testified that when he was struck, he and Ballew were the only people in the immediate area. Ballew left, and as Mock returned to his house, he realized that he was bleeding and that he had been stabbed.

Perry testified that she was at the party at Mock's house and that a fight broke out between some of her male friends and another group of men. She stood on the porch and watched the fighting until she saw Mock come up the stairs. She saw that Mock was bleeding, and she went inside with him. Before Mock came up the stairs, Perry saw him standing with one man in front of him and one man behind. Perry identified Ballew as the man who was standing behind Mock. She testified that there were no other individuals standing behind Mock at that time and that she had seen Ballew at the party earlier that night.

Waddell testified that he was at the party at Mock's house. At around 1 a.m., a female friend of Waddell's came into the house and said that two men outside were harassing her. Waddell and some friends went outside and told the men to leave. Waddell returned to the house. Five to ten minutes later, Waddell heard someone say that there was a fight going on outside. He went outside and saw that one man had another in a headlock and was trying to pull him over a fence. Waddell broke up the fight and turned to help the man who

had been in the headlock. As his back was turned toward the fence, Waddell felt someone grab his shirt and pull him over the fence. Waddell fell to his knees and looked up to see a man who then grabbed Waddell's shirt and threw him into the side of a Jeep that was parked on the street. The man swung at Waddell for 2 to 3 minutes, and Waddell felt "something puncture" him, and remembered being hit in the head, ribs, and back. Waddell heard someone yell "we need to get out of here," and the fighting stopped. Waddell realized he had been stabbed, and he asked Klapperich to call the 911 emergency dispatch service.

Waddell identified Ballew as the man who had thrown him into the side of the Jeep and then swung at him. Waddell testified that he had seen Ballew inside the house earlier that night. Waddell stated that Ballew was wearing "baggy pants" and "a baggier shirt" that night but that he did not remember the color of the shirt. He also testified that he remembered Ballew as having "a lot of tattoos" on his face, neck, and body.

On cross-examination, Ballew questioned Waddell regarding the description of his assailant that he had given to an officer shortly after the stabbing. Waddell agreed that he had said the man was wearing "a white tank top, men's undershirt, and gym shorts and dreadlocks." Waddell testified that he had told the officer that the assailant had tattoos. Ballew attempted to refresh Waddell's memory with a report written by the officer, including the description Waddell had given of the assailant. After reviewing the report, Ballew asked Waddell whether the report stated that he had told the officer that the assailant had tattoos. Waddell answered, "No." The State objected on the basis of improper impeachment; the State argued that the report reflected only what the officer had written down and not necessarily everything Waddell had told the officer. The court sustained the State's objection, but the court did not strike any of Waddell's testimony, and the State did not ask it to do so. Ballew then stated that he had no further questions for Waddell.

Klapperich testified that he went with Waddell to the party at Mock's house. Around 1 a.m., Klapperich heard that Waddell was involved in an altercation outside. He went outside, where he saw a confrontation between Waddell and two other men. Klapperich identified Ballew as one of the men in the confrontation with Waddell. Klapperich convinced Waddell to come back inside. Soon after they got inside, Klapperich heard people yelling that there was a fight outside. Klapperich and Waddell ran back outside, and Klapperich saw Waddell pull two men apart, one of whom had been choking the other. Klapperich testified that a "giant fight" then erupted involving several people. Klapperich saw Ballew slam Waddell's head into the side of a Jeep. The fight continued, and Klapperich saw Ballew "swinging [at Waddell] with an object in hand." Klapperich testified that Ballew's motions were not punches but were instead "a swinging across action. Like there was an object in hand, such as a knife." Klapperich assisted Waddell after the fight was over. Klapperich could tell that Waddell had been cut, and when he pulled up Waddell's shirt, he saw a gash in his ribs. Klapperich helped Waddell inside and called for emergency assistance.

Mock and Waddell were taken to a hospital. A trauma surgeon who treated them testified that Mock had sustained stab wounds to the back and that Waddell had sustained stab wounds to the back, chest, head, and leg.

In Ballew's defense, he recalled police officers who had testified in the State's case and who had investigated the stabbings. Officer Paul Luce had interviewed Waddell shortly after the stabbing. When Ballew asked Luce, "And what did [Waddell] tell you?" the State objected based on hearsay. Ballew argued to the court that Luce's testimony was being offered in order to impeach Waddell's testimony regarding the description of his assailant. The court sustained the State's objection, stating that the question asked for hearsay and that none of the hearsay exceptions applied. Ballew then asked Luce whether Waddell had mentioned that the assailant had tattoos. Luce said he did not recall, and Ballew attempted to

refresh Luce's memory with his report. After Luce's memory had been refreshed, Ballew asked, "Did . . . Waddell mention anything to you about tattoos in regard to the description?" The State objected based on hearsay, and the court sustained the objection. Ballew then stated that he had no further questions for Luce.

Ballew also recalled Officer Patrick Tucker, who had interviewed several witnesses, including Klapperich, shortly after the stabbings. Ballew began to question Tucker about a photographic lineup he had shown Klapperich. The State objected on the basis that Tucker's testimony as to any identification Klapperich made would be hearsay. Ballew responded that the testimony would be used to impeach Klapperich's identification of Ballew. The court sustained the State's objection. Ballew then stated that he had no further questions for Tucker.

After the jury found Ballew guilty on all six counts, Ballew filed a motion for a new trial. Ballew asserted that convictions for both first degree assault and second degree assault with respect to each victim would result in multiple punishments for the same offense in violation of the Double Jeopardy Clauses of the state and federal Constitutions. Regarding the presentation of evidence, Ballew claimed that he was denied his rights to a complete defense and to confront witnesses. Ballew also asserted that the court prejudicially erred in its evidentiary rulings when it prohibited him from questioning Luce and Tucker about statements made by Waddell and Klapperich that were inconsistent with their testimony at trial.

The court overruled Ballew's motion for a new trial. As to procedure, the court sustained the State's objections to evidence that Ballew offered at the hearing on the motion. As to the merits of the motion, the court stated that under Nebraska law, first degree assault and second degree assault are two separate and distinct offenses for double jeopardy purposes. The court also stated that the evidentiary rulings were not erroneous and that even if they were, any error in excluding the evidence did not materially affect Ballew's substantial rights.

The court found Ballew to be a habitual criminal. The court sentenced Ballew to imprisonment for 10 to 22 years for each of the six convictions. The court ordered that the sentences for first degree assault and second degree assault with respect to Mock be served concurrently to one another and that the sentences for first degree assault and second degree assault with respect to Waddell be served concurrently to one another but consecutively to the sentences for assaults with respect to Mock. The court ordered that each of the sentences for use of a deadly weapon be served consecutively to all other sentences imposed.

Ballew appeals his convictions and sentences.

III. ASSIGNMENTS OF ERROR

Ballew claims that the district court erred when it overruled his motion for a new trial in which he asserted that (1) his right against double jeopardy was violated when he was convicted of both first degree assault and second degree assault with respect to each victim and (2) the court's evidentiary rulings violated his right to present a complete defense and his right to confront the witnesses against him. Regarding the evidentiary rulings, Ballew also separately claims that the court prejudicially erred when it (a) sustained the State's objection to his questioning Waddell regarding Waddell's description of his assailant shortly after the stabbing, (b) sustained the State's objection to his questioning Luce regarding Waddell's description of his assailant shortly after the stabbing, and (c) sustained the State's objection to his questioning of Tucker regarding an identification made by Klapperich from a photographic lineup.

We note that Ballew also argues that the court erred when it sustained the State's objections to evidence he offered at the hearing on the motion for a new trial. However, Ballew made no assignment of error with regard to such ruling. In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *State v. Smith*, 286 Neb.

856, 839 N.W.2d 333 (2013). Accordingly, we do not address this argument.

## IV. STANDARDS OF REVIEW

[1] In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014).

[2] Whether two convictions result in multiple punishments for the same offense for double jeopardy purposes presents a question of law, on which an appellate court reaches a conclusion independent of the court below. See *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011).

[3] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. DeJong*, 287 Neb. 864, 845 N.W.2d 858 (2014).

[4] Apart from rulings under the residual hearsay exception, we will review for clear error the factual findings underpinning a trial court's hearsay ruling and review de novo the court's ultimate determination whether the court admitted evidence over a hearsay objection or excluded evidence on hearsay grounds. *State v. Taylor*, 287 Neb. 386, 842 N.W.2d 771 (2014).

[5,6] An appellate court reviews de novo a trial court's determination of the protections afforded by the Confrontation Clause of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution and reviews the underlying factual determinations for clear error. *State v. Patton*, 287 Neb. 899, 845 N.W.2d 572 (2014). The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. *Id*. When issues on appeal present questions of law, an appellate court has an obligation to reach

an independent conclusion irrespective of the decision of the court below. *Id*.

## V. ANALYSIS

In this appeal, Ballew claims that the district court erred when it made certain evidentiary rulings and when it overruled his motion for a new trial. With regard to the motion for a new trial, the district court rejected two arguments that Ballew also makes on appeal: (1) that his convictions and sentences for both first degree assault and second degree assault with respect to each victim violated his right against double jeopardy and (2) that the court's evidentiary rulings were erroneous, violated his right to present a complete defense, and violated his right to confront witnesses against him. We first consider Ballew's double jeopardy argument in the context of the motion for a new trial. We then consider the district court's evidentiary rulings, both with respect to Ballew's argument that the rulings were erroneous and with respect to his argument that such rulings violated his constitutional rights and required a new trial.

### 1. The District Court Did Not Abuse Its Discretion When It Denied Ballew's Motion for a New Trial Based on an Alleged Double Jeopardy Violation

Ballew first argues that he should have been granted a new trial because it was a double jeopardy violation for him to be convicted and sentenced for both first degree assault and second degree assault as to each victim based on the same set of facts. We conclude that such convictions and sentences did not violate double jeopardy and that therefore, the district court did not abuse its discretion when it rejected Ballew's double jeopardy arguments and denied a new trial on such basis.

[7,8] The Double Jeopardy Clauses of both the federal and Nebraska Constitutions protect against three distinct abuses: (1) a second prosecution for the same offense after acquittal,

(2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011). At issue in this case is whether convictions for both first degree assault and second degree assault as to a particular victim arising from the same incident result in multiple punishments for the same offense. Under *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or one is whether each provision requires proof of a fact which the other does not. *Huff, supra.* This test, otherwise known as the "same elements" test, asks whether each offense contains an element not contained in the other. If not, they are the same offense and double jeopardy bars additional punishment and successive prosecution. If so, they are not the same offense and double jeopardy is not a bar to additional punishment. See *id.*

The district court cited two cases in which this court considered the relationship between the crime of first degree assault under § 28-308 and the crime of second degree assault under § 28-309. In *State v. Billups*, 209 Neb. 737, 311 N.W.2d 512 (1981), this court concluded that second degree assault was not a lesser-included offense of first degree assault and that instead, the two were distinct offenses. In *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004), this court concluded that it was not an abuse of discretion to impose consecutive sentences for convictions for first degree assault, second degree assault, and other offenses when the convictions arose from the same transaction. Neither *Billups* nor *Van* directly addressed the question presented here—whether convictions and sentences for first degree assault and second degree assault related to the same victim arising from the same incident result in multiple punishments for the same offense for double jeopardy purposes. We apply the *Blockburger* test and conclude as a matter of law that there is no double jeopardy violation where, as here, a defendant is charged and convicted

of first degree assault under § 28-308 and second degree assault under § 28-309(1)(a).

[9] Section 28-308 provides that one commits first degree assault when one "intentionally or knowingly causes serious bodily injury to another person." Section 28-309(1) provides that one may commit second degree assault in one of three alternative ways: One commits second degree assault (a) when one "[i]ntentionally or knowingly causes bodily injury to another person with a dangerous instrument"; (b) when one "[r]ecklessly causes serious bodily injury to another person with a dangerous instrument"; or (c) when one "[u]nlawfully strikes or wounds another (i) while legally confined in a jail or an adult correctional or penal institution, (ii) while otherwise in legal custody of the Department of Correctional Services, or (iii) while committed as a dangerous sex offender under the Sex Offender Commitment Act." We have stated that "in applying *Blockburger* to separately codified criminal statutes which may be violated in alternative ways, only the elements charged in the case at hand should be compared in determining whether the offenses under consideration are separate or the same for purposes of double jeopardy." *State v. Winkler*, 266 Neb. 155, 163, 663 N.W.2d 102, 108 (2003).

Ballew was charged throughout this case with first degree assault under § 28-308 and second degree assault under § 28-309, but the theory under § 28-309 evolved during the proceedings. The original information charged two counts of second degree assault, one as to each victim, using all three alternative ways of committing the offense described in § 28-309. At the beginning of the trial, the court allowed the State to amend the information to delete allegations based on subparagraph (1)(c) of § 28-309, and at the end of the trial and prior to instructing the jury, the court allowed the State to amend the information to delete allegations based on subparagraph (1)(b) of § 28-309 in order to conform to the evidence. Therefore, the second degree assault charges in this case were based solely on subparagraph (1)(a), which provides that one commits second degree assault when one "[i]ntentionally or

knowingly causes bodily injury to another person with a dangerous instrument."

Applying the *Blockburger* test, we note that both § 28-308 and § 28-309(1)(a) require proof that the person intentionally or knowingly caused bodily injury to another person. However, § 28-308, pertaining to first degree assault, requires proof that the accused caused "serious" bodily injury, whereas § 28-309(1)(a), pertaining to second degree assault, does not require that the injury be "serious." Furthermore, § 28-309(1)(a) requires proof that the accused caused bodily injury "with a dangerous instrument," whereas § 28-308 does not require the use of a "dangerous instrument." In sum, § 28-308 and § 28-309(1)(a) each require proof of a fact which the other does not require, and therefore under the *Blockburger* test, they are not the same offense and double jeopardy is not a bar to punishment for both offenses.

The dissent contends that the *Blockburger* test does not apply in this case because the Legislature has expressed an intent for first degree assault and second degree assault to be a single offense. We agree that the *Blockburger* test does not apply when there is clear legislative intent regarding whether conduct involves a single offense or multiple offenses. See *State v. Miner*, 273 Neb. 837, 733 N.W.2d 891 (2007). However, Ballew directs us to nothing in the statutes that indicates such intent, and the statute referred to by the dissent does not show a clear indication of legislative intent that first degree assault under § 28-308 and second degree assault under § 28-309(1)(a) constitute a single offense.

The *Blockburger* test is "an aid to statutory interpretation" to determine the Legislature's intent and "not a constitutional demand." See *State v. Huff*, 282 Neb. 78, 103, 802 N.W.2d 77, 98 (2011). The *Blockburger* test "should not be controlling where . . . there is a clear indication of . . . legislative intent." *Albernaz v. United States*, 450 U.S. 333, 340, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981).

The U.S. Supreme Court has noted that "[t]he assumption underlying the [*Blockburger*] rule is that [a legislature]

ordinarily does not intend to punish the same offense under two different statutes." *Whalen v. United States*, 445 U.S. 684, 691-92, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980). With regard to the present case, the offenses of first degree assault and second degree assault are defined in two different statutes, §§ 28-308 and 28-309(1)(a), a fact "which, by itself is some indication of legislative intent to authorize multiple prosecutions simply because the offenses are separately defined in different statutes." See *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999). The assumption that two statutes define two separate offenses may be overcome by a clear indication of legislative intent that the statutes constitute a single offense.

We have recognized that offenses defined in different statutes may constitute a single offense if the Legislature has clearly shown its intent that the crimes described are a single offense, making a *Blockburger* analysis unnecessary. See *Miner, supra*. In *Miner*, we held that theft offenses defined in separate statutes, Neb. Rev. Stat. §§ 28-511 and 28-517 (Reissue 2008), constituted a single offense, because Neb. Rev. Stat. § 28-510 (Reissue 2008) specifically provides: "Conduct denominated theft in sections 28-509 to 28-518 constitutes a single offense . . . ." In *Miner*, we stated that we were not employing the *Blockburger* test "[b]ecause the Legislature has *unambiguously* defined theft as a single offense which can be committed in several different ways." 273 Neb. at 846, 733 N.W.2d at 899-900 (emphasis supplied). The Legislature's unambiguous statement in § 28-510 that the statutes defining different varieties of theft constituted a single offense was a clear indication of legislative intent, which made use of the *Blockburger* test unnecessary.

In the present case, there is no similar statute stating that different assault statutes constitute a single offense, and the statute relied on by the dissent does not show clear legislative intent to such effect. The dissent relies on Neb. Rev. Stat. § 29-2025 (Reissue 2008), which states in relevant part, "Upon an indictment for an offense consisting of different

degrees the jury may find the defendant not guilty of the degree charged, and guilty of any degree inferior thereto . . . .'' Although we need not determine the precise meaning of § 29-2025 in this case, we read it as addressing the issue of whether a defendant may be convicted of a lesser offense when a greater offense was charged in the information. Regardless of the contours of § 29-2025, contrary to the interpretation by the dissent, we do not read this statute as showing a clear indication of legislative intent that the crimes found in §§ 28-308 and 28-309(1)(a) define a single offense merely because one offense is denominated as "assault in the first degree" while the other is denominated as "assault in second degree."

Therefore, in the absence of clear legislative intent, we analyze the charges in this case, which charges are based on separate statutes, under the *Blockburger* "same elements" test. Such analysis leads us to conclude that the first degree assault and second degree assault charges upon which this case was tried do not constitute a single offense and that double jeopardy does not bar multiple punishments. Because double jeopardy was not a bar to punishment for both first degree assault under § 28-308 and second degree assault under § 28-309(1)(a) with respect to each victim, we conclude that the district court did not abuse its discretion when it rejected Ballew's double jeopardy argument in support of his motion for a new trial.

### 2. THE DISTRICT COURT DID NOT ERR IN ITS EVIDENTIARY RULINGS, NOR DID IT ABUSE ITS DISCRETION WHEN IT DENIED A NEW TRIAL BASED ON SUCH RULINGS

Ballew also argues that he should have been granted a new trial, because his right to present a complete defense and his right to confront witnesses were violated when the district court's evidentiary rulings prevented him from presenting evidence to impeach testimony by Waddell and Klapperich identifying him as the assailant. In addition to claiming that

the evidentiary rulings required a new trial, Ballew separately claims that the rulings were prejudicially erroneous in and of themselves. We first review each evidentiary ruling in light of Ballew's argument that the ruling was erroneous, and we then review his argument that the rulings violated his constitutional rights and required that he be granted a new trial.

(a) The District Court Did Not Err
When It Sustained the State's
Impeachment Objection to Ballew's
Cross-Examination of Waddell

Ballew first claims that the district court erred when it sustained the State's impeachment objection to his cross-examination of Waddell. We find no error.

Waddell was a witness for the State. He identified Ballew as the person who had assaulted him. On cross-examination, Ballew questioned Waddell regarding the description of his assailant that he had given to an officer shortly after the stabbing. After Waddell testified that he had told the officer that the assailant had tattoos, Ballew attempted to refresh Waddell's memory with a report written by the officer. Waddell reviewed the report, and Ballew then asked Waddell whether he saw anywhere in the report that he had told the officer that the assailant had tattoos. Waddell answered, "No." At that point, the State objected on the basis of improper impeachment and the court sustained the objection. The court did not strike any of Waddell's testimony, and the State did not ask it to do so. Ballew then stated that he had no further questions for Waddell.

Ballew argues that his use of the police report was an appropriate method to refresh Waddell's memory and that it was appropriate for him to impeach Waddell's testimony by showing that shortly after the incident, Waddell gave a description of the assailant that was inconsistent with the description he gave at trial.

We first note that it is unclear what evidence Ballew was prevented from presenting to the jury when the court

sustained the State's objection based on improper impeach-
ment but did not strike any testimony. Ballew was not pre-
vented from using the police report to refresh Waddell's
memory, and before the State objected, Waddell had already
testified that the report did not include a statement that the
assailant had tattoos. After it sustained the State's objection,
the court did not strike the testimony and the State did not
ask it to do so. Ballew stated that he had no further questions
for Waddell.

Given the record just noted, we will nevertheless consider
Ballew's argument that the court erred when it sustained the
State's objection based on improper impeachment to his ques-
tion to Waddell regarding the contents of the police report. We
find no abuse of discretion in the district court's ruling.

[10,11] Prior inconsistent statements are admissible as
impeachment evidence, but they are not admissible as substan-
tive evidence unless they are otherwise admissible under the
Nebraska Evidence Rules. See, *State v. Rodriguez*, 272 Neb.
930, 726 N.W.2d 157 (2007); *State v. Williams*, 224 Neb. 114,
396 N.W.2d 114 (1986). See, also, Neb. Rev. Stat. §§ 27-613
and 27-801 (Reissue 2008). The trial court has considerable
discretion in determining whether testimony is in fact incon-
sistent with prior statements. See *State v. Burton*, 282 Neb.
135, 802 N.W.2d 127 (2011), citing *State v. Marco*, 220 Neb.
96, 368 N.W.2d 470 (1985). We have said that absent an abuse
of that discretion, the trial court's ruling will be upheld on
appeal. *First Nat. Bank in Mitchell v. Kurtz*, 232 Neb. 254, 440
N.W.2d 432 (1989).

Ballew contends that Waddell's trial testimony describing
his assailant was inconsistent with the statement attributed to
Waddell in the officer's report. Ballew asserts this inconsist-
ency goes to Waddell's credibility. Ballew asserts that his line
of questioning was permissible as showing a prior inconsistent
statement, and he does not claim that the proposed testimony
was otherwise admissible.

Fundamental to Ballew's argument is his assertion that the
statements are inconsistent. However, as the district court

necessarily found, Waddell's alleged failure to tell a police officer shortly after the incident that the assailant had tattoos is not inherently inconsistent with his later testimony that the assailant had tattoos. If Waddell had explicitly told the police officer that the assailant did not have tattoos, then the statements would have been inconsistent. But the fact that the police report does not include a descriptive detail that Waddell included in his trial testimony does not establish that Waddell made a prior inconsistent statement. Therefore, to the extent the district court sustained the State's improper impeachment objection because it determined that Ballew had not shown that Waddell's trial testimony was inconsistent with a prior statement, we find no abuse of discretion.

We determine that the district court did not abuse its discretion when it sustained the State's objection based on improper impeachment. We therefore reject Ballew's claim that the evidentiary ruling was erroneous.

### (b) The District Court Did Not Err When It Sustained the State's Objection to Ballew's Questioning of Luce

Ballew next claims that the district court erred when it sustained the State's hearsay objection to his questioning of Luce regarding Waddell's earlier description of his assailant. We find no error.

Ballew called Luce as a witness in his defense. Ballew asked Luce, "And what did [Waddell] tell you?" to which the State objected. Ballew explained to the court that Luce's testimony regarding what Waddell had previously said was being offered in order to impeach Waddell's trial testimony regarding the description of his assailant. Ballew essentially contends that Waddell's description of the assailant before trial was inconsistent with Waddell's testimony at trial.

The court sustained the State's objection and stated that the question asked for hearsay and that none of the hearsay exceptions applied. Ballew then asked Luce whether Waddell had mentioned that the assailant had tattoos. Luce

said he did not recall, and Ballew attempted to refresh Luce's memory with his report. After Luce's memory had been refreshed, Ballew asked, "Did . . . Waddell mention anything to you about tattoos in regard to the description?" The State objected based on hearsay, and the court sustained the objection. Ballew then stated that he had no further questions for Luce.

Ballew argues on appeal that Luce's testimony regarding Waddell's earlier description of his assailant was admissible as a prior inconsistent statement used to impeach Waddell's trial testimony describing the assailant. Ballew contends that the description Waddell gave to Luce roughly at the time of the incident differed from the description Waddell gave in his trial testimony. Ballew asserts that at trial, Waddell described his assailant as wearing baggy clothes and having a lot of tattoos, but shortly after the incident, Waddell told Luce that the assailant was wearing a tank top and gym shorts and Waddell did not mention to Luce that the assailant had tattoos.

[12] Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. § 27-801(3). Ballew contends that the proposed testimony by Luce regarding Waddell's description of the assailant shortly after the incident was not hearsay, because it was not being offered to prove the truth of the description but instead to impeach Waddell by showing that Waddell has made inconsistent statements regarding the description of the assailant. Ballew makes no alternative argument that proposed testimony is otherwise admissible, such as a hearsay statement made admissible pursuant to a hearsay exception.

By determining that the proposed testimony was hearsay, and given the context of the ruling, the district court inherently rejected Ballew's explanation for admissibility and determined that the proposed testimony was not proper impeachment evidence. Thus, we analyze the ruling according to impeachment jurisprudence and apply the standards recited in the prior section relating to impeachment and prior

inconsistent statements. Although our reasoning differs somewhat from the district court, we conclude that the district court did not abuse its discretion when it limited Ballew's questioning of Luce.

Ballew asserted that Waddell's description shortly after the incident was inconsistent with his description at trial with respect to whether the assailant had tattoos and the nature of the clothing the assailant was wearing. With regard to Ballew's questioning Luce about whether Waddell said the assailant had tattoos, as we observed above with regard to the State's objection during Waddell's testimony, the alleged failure to previously state that the assailant had tattoos was not inherently inconsistent with testimony at trial that the assailant had tattoos. As we determined with respect to the objection to Ballew's questioning of Waddell, we conclude that the district court did not abuse its discretion when it determined that Ballew's questioning of Luce about whether Waddell said that the assailant had tattoos would not show a prior inconsistent statement by Waddell and that therefore, the line of inquiry was not suitable for application of prior inconsistent statement impeachment.

With regard to Ballew's questioning Luce about the description Waddell gave of the assailant's clothing, we note that Ballew had earlier questioned Waddell on the same matter. Waddell testified at trial that the assailant was wearing "baggy clothes," including "baggy pants and kind of like a baggier shirt." During Ballew's cross-examination of Waddell, Ballew asked Waddell whether Waddell had given an officer a description of the assailant as wearing a tank top and gym shorts. Waddell answered, "Yes," but he also stated, "I saw gym shorts underneath, yes."

We conclude that the district court did not abuse its discretion when it rejected Ballew's argument in support of admissibility and determined that Waddell's statement to Luce regarding the assailant's clothing was not a proper subject for impeachment by use of a prior inconsistent statement. Waddell's statement during cross-examination indicated that

at least the gym shorts could have been worn underneath a baggier shirt and pants. And the description of the assailant's clothes in the report prepared by Luce was brief and did not appear to be intended as a detailed description. Given that at the time it made its ruling on the State's objection, the court knew both the contents of the police report and Waddell's testimony, it was not an abuse of discretion for the court to determine that the descriptions were not inconsistent and that therefore, impeachment was not warranted. We further note that because Waddell had already testified regarding the description he had given police of the assailant's clothing shortly after the incident, questioning Luce to elicit the same testimony would have been cumulative of testimony Ballew had already adduced during his cross-examination of Waddell.

We reject Ballew's claim that the district court erred when it sustained the State's objection during Luce's testimony in Ballew's defense.

### (c) The District Court Did Not Err When It Sustained the State's Objection to Ballew's Questioning of Tucker Regarding an Alleged Identification Made by Klapperich

Ballew finally claims that the district court erred when it sustained the State's hearsay objection to his questioning Tucker regarding an alleged identification made by Klapperich from a photographic lineup. We find no error.

During his cross-examination of Klapperich in the State's case, Ballew asked Klapperich whether he remembered Tucker's showing him "some pictures"; Klapperich replied, "Yes." Ballew then asked Klapperich whether he picked out the assailant, and Klapperich replied, "I don't remember." Ballew did not question Klapperich further on the matter.

Ballew called Tucker as a witness in his defense. Ballew asked Tucker whether he had shown Klapperich a photographic lineup, and Tucker replied, "I did." Ballew then asked Tucker whether he recalled how many photographs he

had shown Klapperich. Before Tucker could reply, the State requested a sidebar. The State told the court it anticipated that Ballew would ask Tucker whether Klapperich identified someone from the photographic lineup; the State objected on the basis that Tucker's testifying to any identification Klapperich made would be hearsay. Ballew argued that the testimony would not be hearsay, because it would not be used to prove the truth of the matter asserted but instead would be "offered to show that the person made a mistake in the identification." The court sustained the State's objection. Ballew then stated that he had no further questions for Tucker.

Ballew argues that he should have been allowed to question Tucker further about an identification Klapperich allegedly made from the photographic lineup, because such previous identification would be inconsistent with Klapperich's identification at trial of Ballew as the assailant and would impeach Klapperich's trial testimony. However, after the State made its objection, Ballew made no offer of proof to show that Tucker would testify that Klapperich identified someone other than Ballew.

We note that at the hearing on the motion for a new trial, Ballew offered exhibits in support of his motion and the court sustained the State's objections to the exhibits. On appeal, Ballew refers us to one such exhibit, exhibit 74, which is a report written by Tucker, as support for his argument that when shown the photographic lineup, Klapperich identified a person other than Ballew—"a person depicted in photo 5"— as the assailant. Brief for appellant at 21. Even if exhibit 74 had been received, it does not support Ballew's contention. Contrary to Ballew's characterization of the lineup "identification," *id.* at 20, exhibit 74 indicates that Tucker showed Klapperich five photographs of persons who were not Ballew and that Klapperich indicated only that the person shown in photograph 5 more closely resembled the assailant than did the others. The report states that after viewing photograph 5, Klapperich said, "'Looks [m]ore like him, kind of looks like the guy out here.'" The report does not indicate that

Klapperich actually identified the person depicted in photograph 5 as the assailant, and therefore, the earlier lineup "identification" is not inconsistent with Klapperich's trial identification of Ballew as the assailant.

Klapperich's prior lineup identification could not be fairly characterized as an inconsistent statement, and we therefore determine that the district court did not abuse its discretion when it rejected Ballew's argument that his questioning of Tucker would produce nonhearsay evidence of a prior inconsistent statement with which it would be appropriate to impeach Klapperich. We therefore conclude that the court did not err when it limited the questioning of Tucker.

### (d) The District Court Did Not Abuse Its Discretion When It Denied Ballew's Motion for a New Trial Based on Constitutional Violations Resulting From Evidentiary Rulings

In addition to claiming the evidentiary rulings were erroneous, Ballew also argues that a new trial should have been granted, because the rulings deprived him of his right to present a complete defense and his right to confront witnesses. We conclude that the district court did not abuse its discretion when it denied a new trial on such bases.

[13] We have stated that whether rooted directly in the Due Process Clause of the 14th Amendment or in the Compulsory Process or Confrontation Clauses of the 6th Amendment, the federal Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. *State v. Phillips*, 286 Neb. 974, 840 N.W.2d 500 (2013), *cert. denied* ___ U.S. ___, 134 S. Ct. 1899, 188 L. Ed. 2d 930 (2014). See, also, *Crane v. Kentucky*, 476 U.S. 683, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986). However, "'[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *Phillips*, 286 Neb. at 996, 840 N.W.2d at 519,

quoting *Taylor v. Illinois*, 484 U.S. 400, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988).

[14-16] The right of a person accused of a crime to confront the witnesses against him or her is a fundamental right guaranteed by the 6th Amendment to the U.S. Constitution, as incorporated in the 14th Amendment, as well as by article I, § 11, of the Nebraska Constitution. *State v. Patton*, 287 Neb. 899, 845 N.W.2d 572 (2014). But the right is not unlimited, and only guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent the defense may wish. *Id*. When the object of the cross-examination is to collaterally ascertain the accuracy or credibility of the witness, the scope of the inquiry is ordinarily subject to the discretion of the trial court. *Id*. An accused's constitutional right of confrontation is violated when either (1) he or she is absolutely prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness or (2) a reasonable jury would have received a significantly different impression of the witnesses' credibility had counsel been permitted to pursue his or her proposed line of cross-examination. *Id*.

Ballew argues that the court's evidentiary rulings prevented him from presenting a complete defense and from confronting witnesses. As discussed above, we find no error in the district court's evidentiary rulings and, therefore, the evidence Ballew sought to admit was inadmissible under standard rules of evidence. Furthermore, Ballew was allowed to present a meaningful defense and he was allowed to cross-examine the witnesses who identified him as the assailant. With regard to Waddell, despite the court's rulings, Waddell's testimony was not stricken, and Ballew was able to cross-examine Waddell regarding the description of the assailant in the police report attributed to Waddell and the alleged inconsistencies with his description at trial. Ballew was also able to cross-examine Klapperich, and Ballew's contentions do not demonstrate that

Klapperich made any prior inconsistent statement about which Ballew was prevented from questioning Klapperich.

Because we find no violation of Ballew's rights to present a complete defense and to confront the witnesses against him, we conclude that the district court did not abuse its discretion when it denied Ballew's motion for a new trial on such bases.

## VI. CONCLUSION

We conclude that Ballew's convictions and sentences for both first degree assault and second degree assault with respect to each victim did not violate his rights against double jeopardy. We also conclude that the district court's evidentiary rulings were not erroneous and that such rulings did not violate Ballew's right of confrontation or his right to present a complete defense. We finally conclude that the district court did not abuse its discretion when it denied Ballew's motion for a new trial, and we therefore affirm Ballew's convictions and sentences.

AFFIRMED.

STEPHAN, J., not participating in the decision.

CONNOLLY, J., dissenting.

I dissent from the majority opinion for two reasons. I believe that double jeopardy barred Ballew's two convictions for second degree assault. I also conclude that the trial court erred in excluding prior inconsistent statements.

I believe the opinion's double jeopardy analysis overlooks a statute that governs Ballew's convictions for two different degrees of assault arising from the same act. I conclude that Neb. Rev. Stat. § 29-2025 (Reissue 2008) requires the vacation of Ballew's two convictions for second degree assault. Regarding the evidentiary rulings, the district court unmistakably excluded Ballew's impeachment evidence as hearsay or improper impeachment because an officer might have failed to record a more consistent statement. The court never considered whether the witnesses'

prior inconsistent statements were inconsistent enough to be admitted to impeach their credibility.

So I disagree with the majority's conclusions that the court implicitly determined that the witnesses' prior inconsistent statements were inadmissible for this nonhearsay purpose. I believe that the majority opinion erroneously concludes that for a witness' prior statement to be inconsistent, it must be diametrically opposed to the witness' trial testimony. I conclude that the district court erred in excluding proper impeachment evidence and that the error was not harmless when the witnesses' credibility was crucial to the State's convictions.

## COURT'S SENTENCING VIOLATES
## DOUBLE JEOPARDY

The record shows that the jury found Ballew guilty of first degree *and* second degree assault for a single act of attacking Mock with a knife. And it found Ballew guilty of first degree *and* second degree assault for a single act of attacking Waddell with a knife. The majority concludes that Ballew's convictions of first and second degree assault for the same conduct do not violate the double jeopardy prohibition of multiple punishments for the same offense. It concludes that the convictions are not for the same offense under the "same elements" test that we have adopted from *Blockburger v. United States*.[1] It acknowledges that we have not previously decided this issue in the two Nebraska cases dealing with different degrees of assault convictions: *State v. Billups*[2] and *State v. Van*.[3] But it summarily concludes that the *Blockburger* test is appropriate here. I disagree. *Blockburger* does not apply when the Legislature has expressed a contrary intent.

---

[1] *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

[2] *State v. Billups*, 209 Neb. 737, 311 N.W.2d 512 (1981).

[3] *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004).

As relevant here, the Double Jeopardy Clause protects individuals from multiple punishments for the same offense.[4] "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."[5]

Under the *Blockburger* test, "'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.'"[6] "But the question whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized."[7] The "*Blockburger* test is a 'rule of statutory construction,' and because it serves as a means of discerning [legislative] purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent."[8]

For federal courts, if Congress has demonstrated an intent to permit cumulative punishments, the Double Jeopardy Clause is not violated if the trial court imposes the cumulative punishments in a single trial.[9] But the Double Jeopardy Clause "at the very least precludes federal courts from imposing consecutive sentences unless authorized by Congress to

---

[4] *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011).

[5] *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983).

[6] *Brown v. Ohio*, 432 U.S. 161, 166, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977), quoting *Blockburger, supra* note 1.

[7] *Whalen v. United States*, 445 U.S. 684, 688, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980).

[8] *Albernaz v. United States*, 450 U.S. 333, 340, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981). See *Huff, supra* note 4.

[9] *State v. Dragoo*, 277 Neb. 858, 765 N.W.2d 666 (2009), citing *Hunter, supra* note 5.

do so."[10] This rule stems from the framework of the federal Constitution that reserves the power to define criminal offenses and to prescribe their punishments to Congress.[11] So if "a federal court exceeds its own authority by imposing multiple punishments not authorized by Congress, it violates not only the specific guarantee against double jeopardy, but also the constitutional principle of separation of powers in a manner that trenches particularly harshly on individual liberty."[12]

This court has recognized these same principles. Within constitutional boundaries, it is the Legislature's function to define crimes and punishments.[13] Nebraska's separation of powers clause prohibits the three governmental branches from exercising the duties and prerogatives of another branch.[14] Thus, a court may not impose harsher punishments than the Legislature has validly authorized.[15]

These holdings compel the conclusion that a court violates Nebraska's double jeopardy clause by imposing cumulative punishments if the Legislature has not authorized it. We have long held that the protection provided by Nebraska's double jeopardy clause[16] is coextensive with that provided by the U.S. Constitution.[17]

I conclude that under these principles, it is irrelevant that a *Blockburger* analysis would not preclude punishing Ballew for first degree and second degree assault. Under § 29-2025,

---

[10] *Whalen, supra* note 7, 445 U.S. at 689.

[11] See *id.*

[12] *Id.*

[13] See, e.g., *State v. Armagost, ante* p. 117, 864 N.W.2d 417 (2015); *In re Petition of Nebraska Community Corr. Council*, 274 Neb. 225, 738 N.W.2d 850 (2007).

[14] *In re Interest of A.M.*, 281 Neb. 482, 797 N.W.2d 233 (2011).

[15] See, e.g., *State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010); *State v. Rouse*, 206 Neb. 371, 293 N.W.2d 83 (1980).

[16] See Neb. Const. art. I, § 12.

[17] See, e.g., *Dragoo, supra* note 9.

the Legislature did not intend to permit courts to impose cumulative punishments for different degrees of criminal assault arising from a single act.

Section 29-2025, in relevant part, contemplates choosing between a conviction for a charged offense or a lesser degree offense: "Upon an indictment for an offense consisting of different degrees the jury may find the defendant not guilty of the degree charged, and guilty of any degree inferior thereto . . . ." The plain language of § 29-2025 shows that the Legislature intended a fact finder to convict a defendant of a lesser degree offense for the same act only if it finds the defendant not guilty of the greater degree offense. The statute does not permit the fact finder to convict the defendant of both the higher and lesser degree offenses for the same conduct.

It is true that in *State v. Billups*, we held that second degree assault is not a lesser-included offense of first degree assault.[18] But the opinion does not show that the court considered the application of § 29-2025. More important, *Billups* does not control whether second degree assault is a lesser *degree* offense of first degree assault when the Legislature has determined that it is. Notably, in *Billups*, we also held that no evidence supported a claim that the victim was not seriously injured or that the defendant had not acted intentionally. So the defendant could not have shown prejudice from not receiving an instruction on second degree assault under those facts.[19]

Nor does our decision in *State v. Van* apply here.[20] As the majority opinion states, in *Van*, we affirmed the defendant's consecutive sentences for first degree assault, second degree assault, and other offenses. But those offenses did not arise from a single transaction, as the defendant argued on appeal.

---

[18] *Billups, supra* note 2.

[19] See *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011).

[20] *Van, supra* note 3.

The opinion shows that the assaults took place over several days with distinct breaks between them.[21] In affirming the defendant's sentences, we did not even address his argument that his offenses arose from the same transaction.

In sum, I agree with the majority that we have never addressed whether the State can convict a defendant of first and second degree assault when the offenses arose out of the exact same conduct. And I agree that, generally, if a legislature sets out separate offenses in separate and distinct statutes and cumulative punishments are permitted under *Blockburger*, then multiple punishments for those offenses are not a double jeopardy violation.[22] But we have previously recognized that a double jeopardy violation occurs even if the defendant was convicted for separate offenses under the *Blockburger* test if the Legislature has provided that a person shall not be convicted of two offenses arising from the same act.[23] And I similarly believe that we cannot apply *Blockburger* to circumvent the Legislature's intent in § 29-2025.

It seems to me that the majority fails to distinguish between lesser degrees of the same offense and lesser-included offenses. Under § 25-2025, the relevant question is whether the Legislature has authorized punishing a defendant for both first degree and second degree assault for the same act. It has not. It is true that § 29-2025 authorizes a conviction for an uncharged lesser degree of the charged offense. But the majority ignores the language in this sentence that requires an acquittal of the higher degree: "[T]he jury may find the defendant *not guilty of the degree charged*, <u>*and*</u> guilty of any degree inferior thereto." (Emphases supplied.) Normally, we try to avoid interpreting a statute in a manner that renders part of its words meaningless.[24]

---

[21] See *State v. Kleckner, ante* p. 539, ___ N.W.2d ___ (2015).

[22] See *Whalen, supra* note 7.

[23] See *State v. Miner*, 273 Neb. 837, 733 N.W.2d 891 (2007).

[24] See, e.g., *State v. Parks*, 282 Neb. 454, 803 N.W.2d 761 (2011).

I concede that the statute has been applied to instructions for uncharged lesser-included offenses.[25] But it is specifically directed at a conviction for a *lesser degree* of the same offense. It applies when the defendant allegedly committed only one offense—in this case, a single assault against each victim. That is why in states that have a statute like § 29-2025, due process does not preclude a conviction for an uncharged lesser degree of the same offense.[26]

So permitting a conviction for a lesser degree of the charged offense and putting a defendant on notice that such a conviction is possible are obvious purposes of § 29-2025. But the majority can't have it both ways. Due process permits a conviction for an uncharged lesser degree because it is same offense under § 29-2025. So it cannot become a separate offense if the State seeks to convict the defendant of both the greater and lesser degrees. Notably, the majority cites no case in which an appellate court has upheld convictions of two separate degrees of the same crime for the same act.

Finally, even if the meaning of § 29-2025 were unclear, the rule of lenity should preclude interpreting it to permit two different assault convictions for the same assault. We strictly construe penal statutes and will not apply a penal statute to situations or parties not fairly or clearly within its provisions.[27] Ambiguities in a penal statute are resolved in the defendant's favor.[28] I do not believe § 29-2025 is ambiguous. It is a clear indication of the Legislature's intent that a jury can convict a defendant of a lesser degree of the charged offense *only if* it acquits the defendant of the greater degree.[29] But even if the Legislature's intent is not clear enough for the majority, our

---

[25] See, e.g., *Moore v. State*, 147 Neb. 390, 23 N.W.2d 552 (1946).

[26] See, *Salinas v. United States*, 277 F.2d 914 (9th Cir. 1960); *State v. Foster*, 91 Wash. 2d 466, 589 P.2d 789 (1979).

[27] *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014), *cert. denied* ___ U.S. ___, 135 S. Ct. 1505, 191 L. Ed. 2d 442 (2015).

[28] *Id.*

[29] See *State v. Corey*, 181 Wash. App. 272, 325 P.3d 250 (2014).

rules of statutory construction should require the majority to interpret § 29-2025 in Ballew's favor.

I would hold that the court's convictions of first and second degree assault ran afoul of the constitutional double jeopardy guarantee. The jury obviously found the defendant guilty of both counts of first degree assault. But under § 29-2025, it could not simultaneously find him guilty of two counts of second degree assault for the same acts. I believe those convictions should be vacated.

## COURT ERRED IN EXCLUDING PROPER IMPEACHMENT EVIDENCE

### Ballew Properly Attempted to Impeach Waddell's Testimony by Showing His Omission of Material Facts in a Prior Inconsistent Statement

The majority concludes that the court did not err in excluding evidence of Waddell's prior inconsistent statement because the court "necessarily found" that Waddell's previous description of his assailant to Luce was "not inherently inconsistent with his later testimony that the assailant had tattoos."

But the record shows that the court never considered whether Waddell's prior statement was sufficiently inconsistent with his trial testimony. So the majority's conclusion that the prior statement was not inconsistent enough is not a theory of exclusion that Ballew had a fair opportunity to argue against at trial.[30] More important, I believe the majority's standard of diametrically opposed prior statements is incorrect.

As the majority opinion states, during the State's direct examination of Waddell, he stated that he remembered Ballew had "a lot of tattoos" on his face and neck and "spread out on his body." On cross-examination, Waddell stated that he had told Luce that his assailant was a black male with tattoos. Ballew's attorney then showed Waddell an unidentified

---

[30] Compare *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008).

writing to refresh his memory and asked if the writing showed that he had described his assailant as having tattoos. When Waddell said "No," the prosecutor immediately objected. In a sidebar conference, the parties stipulated that Ballew had asked Waddell to review Luce's report of Waddell's statements, and the court admitted the report for ruling on the objection. The prosecutor argued that the report contained only Luce's statement of what he remembered of Waddell's statements and that impeachment was improper because Luce might have omitted something Waddell had told him. Ballew's attorney argued that (1) Luce's report was the best evidence of what Waddell had told Luce, (2) it was proper impeachment to show that Luce had not recorded what Waddell claimed to have reported to him, and (3) the State could recall Luce if necessary. The court sustained the objection as improper impeachment.

Nothing in the sidebar conference shows that the court considered whether Waddell's prior statements to Luce were inconsistent enough with his testimony for the court to admit them as prior inconsistent statements. Instead, the court accepted the State's argument that impeaching Waddell with Luce's report was improper because Luce might not have recorded a *consistent* statement. That reasoning was incorrect.

A witness' prior inconsistent statements are admissible as impeachment evidence.[31] This rule includes a witness' failure to mention a fact of consequence under circumstances in which it would have been natural to assert it. Such an omission amounts to an assertion of the nonexistence of the fact.[32] And we have specifically held that a trial court errs in excluding this type of impeachment evidence.[33]

---

[31] *State v. Rodriguez*, 272 Neb. 930, 726 N.W.2d 157 (2007).

[32] See, *Jenkins v. Anderson*, 447 U.S. 231, 100 S. Ct. 2124, 65 L. Ed. 2d 86 (1980); 3A John Henry Wigmore, Evidence in Trials at Common Law § 1042 (James H. Chadbourn rev. ed. 1970).

[33] *Rodriguez, supra* note 31.

Witnesses in criminal trials are frequently impeached with their statements to police officers after a crime.[34] This is also true when the witness testifies to a fact of consequence at trial but failed to disclose this fact to the officer.[35] It seems to me that if evidence of a witness' prior inconsistent statement were inadmissible because a police report, a document, or a different witness' memory might be incomplete, then most prior inconsistent statements that were not made under oath would be inadmissible to impeach a witness. Because this is clearly not the law, I would reverse the court's ruling that Ballew's attempted impeachment of Waddell was error because the officer might have omitted a critical fact. No evidence called into question the reliability of Luce's report.

### Prior Inconsistent Statements Need Not Be Diametrically Opposed to a Witness' Trial Testimony

Even if—as the majority concludes—the trial court had actually ruled that Waddell's prior statement should be excluded as improper impeachment because it was not inconsistent with his trial testimony, I would reverse. We have explicitly stated that an "inconsistency is not limited to diametrically opposed answers but may also be found in evasive answers,

---

[34] See, e.g., *State v. Dominguez*, 290 Neb. 477, 860 N.W.2d 732 (2015); *State v. Stevens*, 290 Neb. 460, 860 N.W.2d 717 (2015); *State v. Marco*, 220 Neb. 96, 368 N.W.2d 470 (1985), *disapproved in part on other grounds, Dominguez, supra*, and *Stevens, supra*; 21 Am. Jur. Proof of Facts 2d 101 *Impeachment of Witness—Prior Inconsistent Statements* § 16 (1980 & Supp. 2014).

[35] See, e.g., *Anderson v. Charles*, 447 U.S. 404, 100 S. Ct. 2180, 65 L. Ed. 2d 222 (1980); *State v. Luther*, 152 Conn. App. 682, 99 A.3d 1242 (2014); *People v. Toney*, 337 Ill. App. 3d 122, 785 N.E.2d 138, 271 Ill. Dec. 487 (2003); *Com. v. Ragan*, 538 Pa. 2, 645 A.2d 811 (1994); *People v. Bock*, 242 Ill. App. 3d 1056, 611 N.E.2d 1173, 183 Ill. Dec. 525 (1993); *People v. Knight*, 173 A.D.2d 736, 570 N.Y.S.2d 617 (1991); *State v. Thompson*, No. COA02-1597, 2003 WL 22388024 (N.C. App. Oct. 21, 2003) (unpublished disposition listed in table at 160 N.C. App. 710 (2003)).

inability to recall, silence, or changes of position."[36] The question is whether it is reasonable to conclude that a witness who believed the truth of the fact asserted at trial would probably not have omitted that fact when he or she made the prior statement.

Here, Waddell confirmed that he gave a statement to Luce just a few minutes after the attack and that he provided this information so that the police could find the perpetrator. He did not know the assailant, so he would have known that details about the assailant's appearance were critical to identifying and apprehending him. So his omission of a prominent trait like tattoos on the assailant's face, neck, and body is sufficiently inconsistent with his description of the assailant at trial. A witness who believed the truth of this statement would probably not have failed to report this fact to the officers who would be searching for the perpetrator. Even the State's argument at trial tacitly admitted that if Luce's report was a full account of Waddell's description of his assailant soon after the assault, then his description at trial was inconsistent with what he reported to Luce. The same is true about the inconsistencies in Waddell's description of his assailant's clothing.

On direct examination, Waddell said he remembered that Ballew was wearing baggy pants and a baggier shirt but he could not remember what color they were. This description was most consistent with Ballew's appearance in a photograph that Luce took a few minutes after officers arrested Ballew. Waddell testified that he was shown a picture from a camera after he was placed in an ambulance and that he had seen Luce's photograph three other times before trial. The photograph depicts Ballew wearing a loose black T-shirt over a white crewneck T-shirt and low-hanging jeans that exposed

---

[36] *Marco, supra* note 34, 220 Neb. at 100, 368 N.W.2d at 473. Accord, *U.S. v. Cody*, 114 F.3d 772 (8th Cir. 1997); *U.S. v. Denetclaw*, 96 F.3d 454 (10th Cir. 1996); 28 Charles Alan Wright & Victor J. Gold, Federal Practice & Procedure § 6203 (2d ed. 2012); G. Michael Fenner, The Hearsay Rule 61 (2003).

the upper half of his boxer shorts. But Waddell described his assailant to Luce before he saw any photographs, just a few minutes after the assault, while he was still in the house. The point of Ballew's cross-examination of Waddell was to demonstrate that the photograph (or photographs) Waddell saw after his interview with Luce affected his memory of the assailant's appearance.

Ballew asked Waddell if he had told Luce his assailant was wearing gym shorts and a "wife-beater" T-shirt, which was described as a white tank top. Waddell responded that he saw "gym shorts underneath." Ballew then asked Waddell whether he had told Luce that his assailant was a black male with dreadlocks and tattoos, wearing gym shorts and a "wife-beater" T-shirt, and he said yes. But his previous statement that he had seen "gym shorts underneath" implied that he had could have told Luce his assailant had on gym shorts underneath outer baggy pants. And his testimony at trial that his assailant was wearing a baggy shirt of an unknown color was not consistent with his original description that his assailant was wearing a white tank top. I believe that Ballew should have had the opportunity to point out discrepancies in Waddell's description to Luce and his testimony at trial about Ballew's appearance.

Moreover, even if I agreed that the description inconsistencies were not inconsistent enough, Waddell explicitly stated that he had told Luce that his assailant was a black male with tattoos. This inconsistency is relevant to his account of his own conduct and bears on his credibility as a witness.[37] So I disagree with the majority's conclusion that the court properly excluded evidence to impeach Waddell.

For similar reasons, I disagree with the majority's conclusion that the court correctly sustained the State's hearsay objection to Luce's testimony about Waddell's prior statement. It was not hearsay.

---

[37] See, e.g., *Stevens, supra* note 34.

Ballew Properly Attempted to Impeach
Waddell's Testimony Through
Extrinsic Evidence of a Prior
Inconsistent Statement

A witness' prior inconsistent statement that is admitted solely to impeach a witness' credibility is not offered for the truth of the matter asserted and is therefore not hearsay.[38] Neb. Rev. Stat. § 27-613 (Reissue 2008) authorizes a party to introduce extrinsic evidence of a witness' prior inconsistent statement of a material fact if the witness has an opportunity to explain or deny the statement and the opposing party has an opportunity to interrogate the witness.

Here, when Ballew asked Luce what Waddell had said to him about the assailant's description, the State objected that the question called for hearsay. In a sidebar conference, Ballew's counsel explained that she was seeking Luce's testimony to impeach Waddell's testimony about the assailant's description and what he was wearing on the night of the attack. The prosecutor argued that Ballew could only seek to refresh Waddell's memory on his description to Luce and ask him if he had said anything different at that time. The court concluded that Ballew's question called for hearsay and that no exceptions applied. When Ballew's counsel asked Luce if Waddell had mentioned any tattoos, Luce could not recall. After Luce was shown his report to refresh his memory, he was asked the question again. But the court again sustained the State's hearsay objection.

The majority concludes that because the court ruled that the question called for hearsay, it "inherently rejected Ballew's explanation for admissibility and determined that the proposed testimony was not proper impeachment evidence." Again, nothing in the sidebar discussion shows that the court even considered whether Waddell's prior statements were

---

[38] See, *Stevens, supra* note 34; *Rodriguez, supra* note 31; 2 McCormick on Evidence § 249 (Kenneth S. Broun et al. eds., 7th ed. 2013); R. Collin Mangrum, Mangrum on Nebraska Evidence 811 (2015).

inconsistent enough to impeach his trial testimony. Logically, because the court determined that Ballew had offered the statement for the truth of the matter asserted, it did not simultaneously determine that even if he had not offered the prior statement for its truth, there was no inconsistency between Waddell's prior statement and trial testimony. It is true that the court stated no exceptions to the hearsay rule applied. But prior inconsistent statements are not an exception. They are excluded from the definition of hearsay. So the majority's conclusion that Luce's testimony about Waddell's prior statement was not admissible for a nonhearsay purpose is at odds with the court's exclusion of the testimony as hearsay. I conclude the trial court's hearsay rulings were also erroneous.

Regarding the majority's alternative reasoning for excluding Waddell's statement to Luce, I disagree it was not inconsistent enough with Waddell's testimony to be admissible as a prior inconsistent statement. As stated above, it is reasonable to conclude that a witness who believed that his assailant had tattoos on his face, neck, and body would not have failed to mention that fact when describing his assailant to the police. And if Waddell had believed that his assailant was wearing a baggy dark T-shirt and gym shorts underneath baggy pants, he would not have failed to mention those facts.

### Court Erred in Excluding Officer Tucker's Impeachment Testimony as Hearsay

At trial, Klapperich, Waddell's friend, identified Ballew as the person who slammed Waddell's head into a Jeep parked in front of the house and who fought with Waddell in the street. On cross-examination, Klapperich admitted that while he was sitting in Tucker's patrol car, Tucker had shown him photographs. But he could not recall identifying Waddell's assailant. Ballew called Tucker to impeach Waddell and Klapperich. First, Ballew asked if a woman at the party had showed him a photograph on her cell phone, which

photograph he then showed to Waddell. Ballew was not in the photograph. Tucker said after he showed the photograph to Waddell in the ambulance, Waddell told him it was "one of them with the dread locks." The State did not object. But when Tucker confirmed that he had shown a photographic lineup to Klapperich, the State objected that Ballew could not ask whether Klapperich had identified someone in the lineup because the question called for hearsay.

Ballew argued that he was offering the evidence to impeach Klapperich's statement that he could not recall looking at a photographic lineup or making an identification. The court responded that Ballew had impeached Klapperich when Tucker said that he showed Klapperich a photographic lineup and that any further questioning would be asking for identification. Ballew argued that he was not offering the testimony for its truth but to show Klapperich had made a mistake in the identification. The court sustained the hearsay objection.

The majority opinion states that Ballew failed to make an offer of proof to show that Tucker would testify that Klapperich had identified someone besides Ballew. Nonetheless, it concludes that the court did not err in rejecting Ballew's argument that Tucker's testimony would produce nonhearsay evidence of a prior inconsistent statement. The majority reasons that Klapperich's statements in Tucker's report—which the court excluded after the hearing on Ballew's motion for a new trial—shows that Klapperich's prior statement was not inconsistent with his trial testimony.

I think this reasoning is internally inconsistent and potentially misleading to practitioners. When the substance of excluded evidence "was apparent from the context within which questions were asked,"[39] an offer of proof is unnecessary.[40] If the substance was not apparent to the trial court, then the party waives an argument on appeal that the court erred

---

[39] Neb. Rev. Stat. § 27-103(1)(b) (Reissue 2008).

[40] See *Rodriguez, supra* note 31.

in excluding the evidence.[41] So if Ballew's failure to make an offer of proof were fatal to his argument, that conclusion should be the end of the analysis. Nor should the majority address the substance of Tucker's report as a substitute for his presumed testimony. That report is not in evidence. The court excluded it as hearsay after the hearing on Ballew's motion for a new trial, and the majority has concluded that Ballew waived any objections regarding that ruling.

In short, we should evaluate the court's hearsay ruling from the questioning at trial to determine whether the court properly excluded Tucker's testimony. Here, the substance of the evidence that Ballew sought to introduce was clear. Both the State's argument and the court's reasoning confirm that the court excluded the evidence because Ballew sought confirmation that Klapperich had identified someone other than Ballew as the assailant. That is, Ballew sought to show that Klapperich had made a prior statement that was inconsistent with his testimony that Ballew was the assailant. An offer of proof was unnecessary under these circumstances.

More important, the court erred in excluding the evidence as hearsay because Ballew offered it to impeach Klapperich's credibility, not to prove the truth of his previous statement:

> The theory of impeachment does not depend upon the prior statement being true and the present one false. Instead, the mere fact that the witness stated the facts differently on separate occasions is sufficient to impair credibility. By "blowing hot and cold," doubts are raised as to the truthfulness or accuracy of both statements. Thus, the prior statement is not offered for its truth and is not hearsay.[42]

The State did not object that Klapperich's statements were not inconsistent enough to be inadmissible as a prior inconsistent statement. Moreover, even if Tucker's report were part

[41] See, e.g., *State v. Sing*, 275 Neb. 391, 746 N.W.2d 690 (2008).

[42] 2 McCormick on Evidence, *supra* note 38 at 195.

of this record, we cannot know whether Ballew's question-
ing would have fleshed out that report. But I disagree that
Klapperich's prior statement would be inconsistent only if
he had positively identified someone besides Ballew as the
assailant. If Klapperich identified someone as a possible or
probable assailant and that person's appearance was different
from his testimony at trial about Ballew's appearance, this
discrepancy would bear on Klapperich's credibility as a wit-
ness. Unfortunately, because the court incorrectly excluded
the evidence as hearsay, we cannot review whether it was
admissible for a nonhearsay purpose. Instead, the relevant
question is whether the rulings were harmless error. They
were not.

## COURT'S EXCLUSION OF PROPER
## IMPEACHMENT EVIDENCE WAS
## NOT HARMLESS ERROR

An error in admitting or excluding evidence in a criminal
trial, whether of constitutional magnitude or otherwise, is
prejudicial unless the error was harmless beyond a reasonable
doubt.[43] Harmless error review looks to the basis on which the
jury actually rested its verdict; the inquiry is not whether in
a trial that occurred without the error, a guilty verdict would
surely have been rendered, but whether the actual guilty verdict
rendered was surely unattributable to the error.[44]

Here, the witnesses gave conflicting testimony on key facts
at the party, so determining their credibility was of paramount
importance in finding Ballew guilty. Because the scene was
crowded and chaotic, the discrepancies in their testimony were
not insignificant.

There were 50 to 60 people at the party. Waddell and
Klapperich both said around 15 to 20 black males came to the
party and more than one them had a dreadlock hairstyle like
Ballew's. A brawl broke out in the yard between a disputed

---

[43] *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015).

[44] *Id.*

number of black males and white males, who did not previously know each other. Luce testified that the outside lighting was low. There were discrepancies in the witnesses' testimonies on where Mock was and what he was doing when he was stabbed. There were also discrepancies on Ballew's placement during the melee—whether he was in front of the house with a group of 4 or 5 other black males fighting against about 10 white males, including Mock, or whether he was fighting a few yards away with Waddell and others by the fence. Finally, there were discrepancies in the witnesses' testimony about Ballew's appearance.

Against this backdrop, prior inconsistent statements in Waddell's and Klapperich's descriptions of the assailant were obviously relevant to whether they had credibly identified Ballew as the assailant. This is especially true when Waddell's memory could have been affected by a photograph of Ballew that Waddell saw soon after his interview with Luce. This is not a case in which the evidence of Ballew's guilt was overwhelming. I conclude that the court's erroneous exclusion of evidence relevant to Waddell's and Klapperich's credibility was not harmless beyond a reasonable doubt. I would reverse the judgments of conviction and remand the cause for a new trial.