IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. FERNANDEZ-SUAREZ


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

EDGAR I. FERNANDEZ-SUAREZ, APPELLANT.


Filed April 5, 2016.    No. A-15-642.


Appeal from the District Court for Douglas County: LEIGH ANN RETELSDORF, Judge. Affirmed.

Christopher J. Roth, of Kasaby & Nicholls, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee


INBODY, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

### INTRODUCTION

Edgar I. Fernandez-Suarez appeals his jury conviction for one count of sexual assault of a child in the third degree. He asserts there was not sufficient evidence to support his conviction. He also asserts the trial court erred in allowing certain evidence and preventing him from fully confronting his accuser. For the reasons that follow, we affirm.

### BACKGROUND

Fernandez-Suarez was charged by information with one count of sexual assault of a child in the third degree, a Class IIIA felony. Neb. Rev. Stat. § 28-320.01. Fernandez-Suarez was tried by jury on March 11, 12 and 13, 2015 and convicted.

The victim, Lilliana S., was 12 years old at the time of trial but was 11 during the weekend of May 3, 2014, when the crime occurred. On May 3, Lilliana was dropped off in the afternoon at the home of her grandmother, Clotilde S., who is known as Debbie. A Cinco de Mayo celebration was taking place near Debbie's apartment that weekend. Debbie took Lilliana to the celebration to watch a parade and Lilliana was allowed to ride some of the rides. They returned to the apartment Debbie shared with her husband, Fernandez-Suarez, who was known to Lilliana as "Albert." They ate and rested for a period of time, then Debbie asked Fernandez-Suarez to take Lilliana back to the rides. Fernandez-Suarez did not ride any of the rides with Lilliana, and she said he did not touch her in a way that made her feel uncomfortable or afraid. They returned to the apartment after about 15 to 20 minutes. Lilliana returned to the rides for a third time with Debbie and they stayed for about an hour.

After returning to the apartment for the final time at about 10 p.m., Lilliana ate a sandwich and laid down on the couch in the living room. She was curled in a ball on her right side with her face toward the back of the couch. Fernandez-Suarez was also sitting on the couch, near Lilliana's feet watching soccer on television and drinking a beer. Lilliana testified that Fernandez-Suarez was cheering while he watched the game, but he never stood up; he remained seated on the couch. While Lilliana and Fernandez-Suarez were on the couch, Debbie was in the kitchen, which was immediately adjacent to the living room. Debbie was washing dishes with the water running.

Lilliana testified that she was wearing jean shorts and a jacket and was covered in a pink, fuzzy blanket. She said she was trying to go to sleep and her eyes were "closed a little bit." Lilliana testified that Fernandez-Suarez reached under the blanket and touched the middle of her buttocks with his finger. She said he "kept going down into my private area," moving his hand very slowly. When she testified she did not want to say the anatomical word for what she called her "private area," so she spelled out "vagina" instead. She demonstrated how Fernandez-Suarez touched her vaginal area with his finger, moving it in a line. She said he touched her for about 5 seconds, and of that time, he touched her vagina for 2 or 3 seconds.

Lilliana was asked whether there was any way that the touching could have been accidental, and she replied, "No." She said a person does not accidentally put their hand under a blanket and touch somebody. She said her feet were the part of her body closest to him but he did not touch her feet, he reached over to touch her "area". Lilliana said she had her eyes open a little bit and looked at Fernandez-Suarez out of the corner of her left eye as he was touching her, and he was staring right at Debbie. Lilliana said that when Debbie turned off the water in the kitchen, Fernandez-Suarez immediately stopped touching her and moved toward the right, away from Lilliana. Lilliana did not say anything to Fernandez-Suarez because she did not know what to say, and after he stopped touching her, she sat up, acted like she was stretching, as though she had just awakened.

Around that time, Lilliana's father, Ignacio S., who is known by the nickname "JR" texted Debbie to say he was on his way to pick up Lilliana. Lilliana said she did not tell Debbie what had happened immediately because "[Fernandez-Suarez] could do anything if I tell her. He could -- for all I know, he could have a gun in his pocket, could have shot both of us because he didn't want --." Fernandez-Suarez moved to strike the testimony as prejudicial, and the objection was overruled.

Lilliana testified that she, Debbie, and Fernandez-Suarez were planning to move Debbie's pickup truck from the back of the building to the front. When Fernandez-Suarez received a phone

call, Lilliana asked Debbie if the two of them could move the truck without him, and Debbie agreed. When Lilliana and Debbie went into the hallway, she told Debbie that Fernandez-Suarez had reached under the blanket and touched her while Debbie was doing the dishes. Lilliana said she was tearing up when she told Debbie, and Debbie started to cry. They moved the truck together, and stayed in it until Lilliana's father arrived. Debbie asked Lilliana not to say anything to her father. Lilliana said Debbie planned to ask Fernandez-Suarez if he touched Lilliana, and no matter what the answer was, Debbie planned to bring Fernandez-Suarez to JR's house to apologize.

When she arrived at home, Lilliana changed into pajamas, watched television, and went to bed. About an hour later, Lilliana heard Debbie's truck and looked out to see Debbie and Fernandez-Suarez had arrived. Lilliana stayed in her room and could hear some discussion among the adults, but could not understand Fernandez-Suarez because he was speaking in Spanish. She said she heard Debbie crying, and a "smacking" sound, which she found out was the sound of her father hitting Fernandez-Suarez. Debbie and Fernandez-Suarez were at her father's house for approximately 15 minutes, and after they left, she was interviewed by a police officer.

Lilliana testified that she had no reason to lie about the incident, and said she would not make up an incident like this because it would not be right to do so. She said that prior to May 3, she had no reason to dislike Fernandez-Suarez but she had a feeling about him that something "just wasn't right."

On cross-examination the defense questioned Lilliana about prior statements that were allegedly inconsistent with her testimony. Lilliana denied telling the police officer that Fernandez-Suarez walked up behind her and touched her; she said she told the officer that Fernandez-Suarez was sitting down. Lilliana admitted that her testimony at trial was the first time she said she was afraid that Fernandez-Suarez might have had a gun. Counsel for Fernandez-Suarez asked "And you didn't want to warn your dad then that he might have this gun you're talking about?" The State objected that the question was argumentative, and the objection was sustained. The defense did not pursue the subject of the gun any further.

JR testified that on the night of May 3, he dropped Lilliana off at his mother's home and he and his fiancée attended a boxing match. After the match, he made arrangements to pick up Lilliana. He spoke briefly to his mother, and did not notice anything unusual about Lilliana's behavior as they left to go home. He testified that there was a knock on the door at approximately 1 a.m. and he found Debbie and Fernandez-Suarez standing at the door. JR observed that Fernandez-Suarez appeared to be swaying. JR testified that Fernandez-Suarez said that he was sorry, that he had been drinking, and the three of them all were talking at once. He said Debbie came into the house and made him aware that there was inappropriate sexual contact involving Fernandez-Suarez and Lilliana. JR observed Fernandez-Suarez to be sincere and apologetic, while Debbie was "kind of hysterical," threatening and slapping her husband on the shoulder.

JR went into Lilliana's room to find her awake and sitting up in bed. He comforted her and asked her some questions. He observed her demeanor to be nervous or afraid, in a way that he had not seen her act before. He asked Lilliana if she wanted him to call the police, and if she wanted him to "kick his ass." Lilliana answered yes to both questions. JR returned to Debbie and asked her to call the police, and he hit Fernandez-Suarez in the face.

JR testified that he does not speak Spanish, but Fernandez-Suarez speaks and understands English well. He said when they spoke about the incident they spoke in English, and

Fernandez-Suarez never said JR misunderstood the situation, said Lilliana was lying, or in any way denied that the incident had occurred. JR testified that Fernandez-Suarez apologized to him in English and JR had no difficulty understanding him. JR took Fernandez-Suarez outside and told him to sit on the steps. Fernandez-Suarez left by the time the police arrived.

Officer Jonathan Kauffman, of the Omaha Police Department, testified that he was sent to take the reports of Lilliana and JR after the reported sexual assault on May 3, 2014. He spoke to Debbie first, who was visibly distraught. He spoke to Lilliana, in the presence of her father, for about half an hour. He testified that Lilliana was visibly upset, but was able to speak calmly to him, and looked to her father for comfort during the conversation. Kauffman said initially Lilliana did not want to talk about the incident, but she did eventually. Kauffman spoke to JR for about 20 minutes, and did not make contact with Fernandez-Suarez, as he was not present. On cross-examination, Kauffman said that he gathered, from speaking to Lilliana, that Fernandez-Suarez walked up behind her and reached under the blanket, and he touched her buttocks and vagina.

Detective Chad Kavars, of the Omaha Police Department, testified that he spoke to Lilliana and JR on May 12, 2014 at Project Harmony. He said she answered his questions, and seemed nervous and embarrassed about some of the things they discussed. Kavars testified that Lilliana gave good details and the account of the incident she provided to Kauffman was consistent with what she told him as well. Kauffman testified that Lilliana disclosed that she was touched on her vagina over her clothes, and Fernandez-Suarez moved his finger around "as if he was looking for something."

Fernandez-Suarez testified that prior to May 3, he had a good relationship with Lilliana and had never had any problems with her. He said that on May 3, he was watching soccer on television while sitting on the couch. He said that he touched Lilliana, but that the touch was accidental, and he denied touching her inappropriately. He stated that the soccer match became exciting, so he put his hands out, stood up, and touched her as he was standing up. He testified that Debbie took Lilliana to meet JR and when Debbie returned she was crying and said it was because of what he had done. Fernandez-Suarez asked what he had done and she replied "Lilly told me that you touched her." He testified that he discussed the incident with Debbie, then they went to JR's house to talk to him about touching Lilliana. He said he wanted to talk to JR, even though the touch was accidental, because he did not want to have problems with JR or any of Debbie's children.

Fernandez-Suarez testified that he had three beers on May 3, and was not intoxicated. He stated that his appearance on that night was a result of working under the sun all day, the beer, and not eating very well. Fernandez-Suarez testified that he did not apologize to Lilliana or tell her it was an accident. He said during the 15 to 20 minute car ride Debbie was crying and did not want to talk to him so he did not get a chance to explain that touching Lilliana was accidental. Fernandez-Suarez testified that the only thing he said to JR was "I touched your daughter," and he was not allowed to say more. He denied apologizing and he did not know the explanation for JR's testimony that Fernandez-Suarez had apologized to him in English.

The case was submitted to the jury, and the jury found Fernandez-Suarez guilty of sexual assault of a child in the third degree. Fernandez-Suarez was sentenced on June 17, 2015 to 4 to 5 years' imprisonment with credit for 349 days served. He has timely appealed.

## ASSIGNMENTS OF ERROR

Fernandez-Suarez asserts the evidence was not sufficient to support a jury verdict of guilty because a rational trier of fact could not find all of the elements of the offense charged beyond a reasonable doubt. Fernandez-Suarez also asserts the trial court erred by allowing a suggestion that he may have had a gun, and by not allowing him to fully confront his accuser on cross-examination.

## STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Tharp,* 22 Neb. App. 454, 854 N.W.2d 651 (2014).

When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Fick,* 18 Neb. App. 666, 790 N.W.2d 890 (2010).

## ANALYSIS

In his first assignment of error, Fernandez-Suarez asserts the evidence was not sufficient to support a jury verdict of guilty. Neb. Rev. Stat. § 28-320.01(1)(Reissue 2008) states that a person commits sexual assault of a child in the second or third degree if he or she subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older. "Sexual contact" is defined in §28-318 (Cum. Supp. 2012) as the "intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts." The statute states sexual contact "shall only include such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party." § 28-318(5) "Intimate parts" are defined by §28-318(2) as the "genital area, groin, inner thighs, buttocks, or breasts."

Fernandez-Suarez asserts the State presented insufficient evidence to prove the "sexual gratification" element of the crime. Fernandez-Suarez asserts the evidence at trial regarding sexual contact consisted solely of testimony of Lilliana, and she "changed her story as to how she was touched." He asserts the evidence conflicted with his testimony that he touched Lilliana accidentally and that he did not touch her "sexual or intimate parts."

Lilliana, who was 11 at the time of the incident, and 12 at the time of trial, was asked to describe how and where she was touched, by Fernandez-Suarez, a 42 year old man. The record shows that she was uncomfortable discussing specific parts of her anatomy. Though her description of how she was touched varied slightly, she was clear that Fernandez-Suarez touched her buttocks, and her "private area," including touching her vagina on the outside of her clothing. She testified that his hand reached under the blanket that was covering her, and that she believed his act was intentional. Lilliana testified that during the approximately 5 seconds that he was

touching her, she could see him watching Debbie in the next room, and that he withdrew his hand immediately and moved away from her when Debbie turned off the water in the kitchen.

Fernandez-Suarez testified that he touched Lilliana, but the act was accidental and was not sexual in nature. He testified that he touched her as he stood up from the couch, caught up in the excitement of the soccer game he was watching.

The jury, as the finder of fact, found the evidence was sufficient to support a conviction for sexual assault of a child in the third degree. In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence, as these matters are for the finder of fact. See *State v. Tharp,* supra. Lilliana's testimony that Fernandez-Suarez touched her intentionally by reaching under a blanket, while keeping an eye on his wife is circumstantial evidence that the touching was intended for his sexual gratification. Circumstantial evidence is not inherently less probative than direct evidence, and a fact proven by circumstantial evidence is nonetheless a proven fact. See *State v. Pierce,* 248 Neb. 536, 537 N.W.2d 323 (1995). Viewing and construing the evidence most favorably to the State, we find the evidence was sufficient to support the jury's finding Fernandez-Suarez was guilty.

In his second assignment of error, Fernandez-Suarez asserts the court erred by allowing an allegation by Lilliana that he may have had a gun, and then further erred by not allowing him to fully confront her regarding the allegation on cross-examination.

At trial, Lilliana was asked whether she immediately told her grandmother about what had happened. She said she did not tell Debbie immediately because "he could do anything if I tell her. He could -- for all I know, he could have a gun in his pocket, could have shot both of us because he didn't want --." Fernandez-Suarez moved to strike the statement as prejudicial, and the objection was overruled. Counsel for the State clarified that Liliana was not sure what would happen if she were to tell Debbie what had just happened at the time Debbie had entered the living room from the kitchen.

On cross-examination, counsel for Fernandez-Suarez asked Lilliana if she knew Debbie and Fernandez-Suarez were going to come to her father's home late on May 3 or in the early hours of May 4. Lilliana said she did, and then counsel asked "And you didn't want to warn your dad then that [Fernandez-Suarez] might have this gun you're talking about?" The State objected to the question as argumentative, and the objection was sustained. The defense did not make any further inquiry regarding the gun.

Fernandez-Suarez asserts the "evidence concerning the belief that he may have had a gun and would shoot [Lilliana] and her grandmother, Debbie [S.], had little to no probative value and was unfairly prejudicial" to him. He asserts the statement portrayed him as a potential killer, and may have prejudiced the jury to believe that he was capable of sexually assaulting a child. He asserts "Such a basis for the jury's finding of guilt would be an improper basis."

Neb. Rev. Stat. § 27-403 (Reissue 2008) provides that evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Fick,* 18 Neb. App. 666, 790 N.W.2d 890 (2010). "The fact that relevant evidence is prejudicial is not enough to require exclusion under § 27-403, because most, if not all, of the evidence a party offers is calculated to be prejudicial to the opposing party; it is only evidence which has a tendency to suggest a decision on an improper basis that is unfairly prejudicial under § 27-403." *Id.*

The only evidence regarding a gun, was the statement Lilliana made, which was clarified to show that she did not immediately tell Debbie what had happened while Fernandez-Suarez was in the room, because she was unsure of how he would react if confronted. While the possibility of possession of a gun would be an improper basis for the jury to rely on for a finding of guilty, it is more likely that the jury believed Fernandez-Suarez would be capable of sexual assault based upon Lilliana's testimony that he intentionally touched her buttocks and vagina. We find the district court did not err in overruling Fernandez-Suarez's objection because the probative value in determining why Lilliana did not immediately report Fernandez-Suarez's conduct while he was in the room was not substantially outweighed by the danger of unfair prejudice.

Additionally, Fernandez-Suarez asserts the trial court erred by not allowing him to fully confront his accuser on cross-examination. Fernandez-Suarez asserts he did not have a meaningful opportunity to question Lilliana about the possibility of a gun because the district court sustained the objection that his question was argumentative. He asserts "This did not allow [him] to fully explore the outlandish notion by [Lilliana] that [he] may have had a gun."

The right of a person accused of a crime to confront the witnesses against him or her is a fundamental right guaranteed by the 6th Amendment to the U.S. Constitution, but that right is not unlimited, and only guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever the extent the defense may wish. *State v. Ballew,* 291 Neb. 577, 867 N.W.2d 571 (2015). A defendant does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Id.*

Fernandez-Suarez was given the opportunity to cross-examine Lilliana, but the State objected to the form of the question posed, as it was argumentative. After the State's objection was sustained, the defense asked additional questions of the witness, but did not rephrase the question originally posed, or follow-up with additional questions regarding the possibility of a gun, nor did they make an offer of proof. We find Fernandez-Suarez's right to confront his accuser was not violated, as he was not prevented from pursuing a line of questioning regarding the possibility of a gun, he was simply prevented from posing questions in an argumentative manner. We find this argument is without merit.

## CONCLUSION

We find the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. We find the district court did not err in overruling Fernandez-Suarez's objection to the victim's testimony, and we find no merit in the assertion that he was denied the right to fully confront his accuser on cross-examination.

AFFIRMED.