Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/12/2025 09:07 AM CDT

State of Nebraska, appellee, v.
Maylesha S. Lewis, appellant.

___ N.W.3d ___

Filed September 12, 2025.    No. S-24-481.

1. **Trial: Expert Witnesses: Appeal and Error.** An appellate court reviews a trial court's ruling to admit or exclude an expert's testimony for abuse of discretion.

2. **Convictions: Evidence: Appeal and Error.** Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction.

3. **Double Jeopardy: Convictions: Appeal and Error.** Whether two convictions result in multiple punishments for the same offense for double jeopardy purposes presents a question of law, on which an appellate court reaches a conclusion independent of the court below.

4. **Proximate Cause.** As a general matter, to say one event proximately caused another is a way of making two separate but related assertions: First, it means the former event caused the latter; second, it means that it was not just any cause, but one with a sufficient connection to the result.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Jessica C. West for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Papik, J.

After a traffic accident in which a passenger in her vehicle was seriously injured, Maylesha S. Lewis was charged and convicted of driving under the influence resulting in serious bodily injury. When the passenger later died, the State charged Lewis again, this time with motor vehicle homicide while operating a vehicle under the influence. Lewis took the position that this subsequent prosecution violated her double jeopardy rights. The district court agreed and dismissed the prosecution, but we later found that, under the circumstances, double jeopardy principles did not bar a successive prosecution. See *State v. Lewis*, 313 Neb. 879, 986 N.W.2d 739 (2023), *cert. denied* ___ U.S. ___, 144 S. Ct. 175, 217 L. Ed. 2d 70 (*Lewis I*).

Back in the district court following our remand, Lewis was tried, convicted, and sentenced on the motor vehicle homicide charge. She now appeals. Among other challenges to her conviction, she argues that the district court should have vacated her conviction and sentence on the ground that she has been subjected to multiple punishments in violation of her double jeopardy rights. We find no merit to Lewis' arguments on appeal and therefore affirm.

## I. BACKGROUND

### 1. DUI/Serious Bodily Injury Prosecution

In October 2020, Lewis was charged with driving under the influence resulting in serious bodily injury, a Class IIIA felony, in violation of Neb. Rev. Stat § 60-6,198 (Reissue 2021). As we did in *Lewis I*, we refer to the offense, for ease of reference, as "DUI/serious bodily injury."

Lewis ultimately pled guilty. According to the State's factual basis at the plea hearing, on October 11, 2020, Lewis was operating a vehicle that left the roadway and collided with a light pole. A passenger in that vehicle, Thomas Martin, was severely injured in the collision. Lewis admitted she had consumed alcohol and smoked marijuana before the collision. Chemical testing after the collision showed her blood alcohol content was above the legal limit. The State recited that Martin was transported from the collision scene with "life-threatening" injuries. Martin remained hospitalized in a non-medically-induced coma. The court accepted Lewis' guilty plea and set the matter for sentencing.

Lewis was sentenced to 30 months' incarceration followed by 18 months of post-release supervision, as well as a 5-year license revocation with the option of applying for an ignition interlock device "[a]s soon as allowed by law." On the date Lewis was sentenced, Martin remained hospitalized in a persistent vegetative state.

Martin died several months later in June 2021.

## 2. Motor Vehicle Homicide/DUI Charge

In December 2021, the State charged Lewis in the district court with "motor vehicle homicide (DUI/ODR)," a Class IIA felony, in violation of Neb. Rev. Stat. § 28-306(1) and (3)(b) (Reissue 2016). As in *Lewis I*, we refer to this offense, for ease of reference, as "motor vehicle homicide/DUI." The information alleged that Lewis caused the death of Martin while engaged in the unlawful operation of a motor vehicle while under the influence in violation of Neb. Rev. Stat. § 60-6,196 (Reissue 2021).

Lewis filed a plea in bar, which the district court sustained. The district court applied the test from *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). It found that the crimes of DUI/serious bodily injury and motor vehicle homicide/DUI were the "same offense" for double jeopardy purposes.

### 3. EXCEPTION PROCEEDINGS

The district court granted the State's request for leave to docket exception proceedings pursuant to Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 2024), and the State filed a timely notice of appeal. We granted the State's petition to bypass the Nebraska Court of Appeals.

The State argued on appeal that the district court erred in relying on the *Blockburger* test to analyze Lewis' double jeopardy claim. Our analysis observed that *Blockburger* sets forth what is known as the same elements test—the general rule that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304. However, we recognized that *Diaz v. United States*, 223 U.S. 442, 32 S. Ct. 250, 56 L. Ed. 500 (1912), articulated an exception to the general double jeopardy rule forbidding successive prosecution for a greater offense after prosecuting a lesser-included offense. We joined other jurisdictions that apply the *Diaz* exception and held:

> [D]ouble jeopardy principles do not bar a successive prosecution in those situations where the State was unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge had not yet occurred at the time of the prosecution for the first offense.
>
> The *Diaz* exception applies here. At the time Lewis was charged and convicted for DUI/serious bodily injury, Martin was seriously injured but still alive. Because Martin's death was a necessary element of the offense of motor vehicle homicide/DUI, the State was not able to bring the more serious charge at the time it prosecuted Lewis for DUI/serious bodily injury. Under *Diaz*, double jeopardy permits the State to prosecute Lewis for the more serious offense of motor vehicle homicide/DUI,

despite having previously convicted her of DUI/serious bodily injury.

*Lewis I*, 313 Neb. at 889, 986 N.W.2d at 746.

We concluded that, under the circumstances, it was appropriate under Neb. Rev. Stat. § 29-2316 (Reissue 2016) to reverse the district court's order granting the plea in bar and to remand the cause of further proceedings.

## 4. Motor Vehicle Homicide/DUI Trial

On remand, the district court conducted a bench trial on the motor vehicle homicide/DUI charge.

Regarding Martin's condition, the State presented the testimony of Dr. Robert Bowen, a pathologist. He explained that pathology is the study of disease processes and testified that he occasionally reviewed case files concerning cause of death. Bowen was not involved with Martin's medical care, but he reviewed Martin's medical records dating from the day of the crash on October 11, 2020, to Martin's death in June 2021.

Bowen testified that Martin's medical records showed he was initially treated for a laceration to the head, a skull fracture, severe brain injuries, and brain materials "extrud[ing] into" his sinuses. Bowen observed that when Martin arrived at the hospital emergency room, medical staff performed a craniotomy to remove blood from the brain and introduced a breathing tube and a feeding tube because Martin was not able to breathe or eat on his own. Bowen testified that in November 2020, Martin was discharged from the hospital and transferred to a rehabilitation center. However, after Martin began leaking fluid from his sinuses, running a fever, and throwing up, he was readmitted to the hospital in December 2020. He was eventually transferred to a rehabilitation center again but had to be readmitted to the hospital in February 2021 due to "neuro storms" caused by his ongoing brain trauma. Martin was later transferred to a rehabilitation center; in April 2021, however, he returned to a hospital for treatment

because he had developed persistent pneumonia and his brain was shrinking. Bowen testified that at the hospital, Martin was diagnosed with paralysis of the stomach. He was again transferred to a rehabilitation center in June 2021, where he developed sepsis—bacteria in his bloodstream signifying that his body was failing. Bowen testified that shortly thereafter, it was determined that further medical interventions would be futile; Martin was placed in a hospice facility for comfort care where he died on June 17, 2021, about 8 months after the accident.

Over Lewis' objection, Bowen testified that the injuries Martin sustained in the collision were the proximate cause of his death:

Q. . . . And what is your opinion, Dr. Bowen, as it relates to Thomas Martin's cause of death on June 17 of 2021?

[Counsel for Lewis:] Objection, foundation, speculation, no personal knowledge, Your Honor.

THE COURT: I'm going to sustain as to foundation. Just have him set forth what the basis of his opinion is.

. . . .

Q. . . . Your opinion as to the cause of Thomas Martin's death as it relates to that motor vehicle collision, what's that based on?

A. Based on my review of the medical records and my personal experience.

. . . .

Q. And what is your opinion as it relates to the cause of death from the motor vehicle collision for Thomas Martin?

[Counsel for Lewis:] Objection.

THE COURT: Overruled.

A. In my opinion, the cause of death is directly related to the trauma to his head, and so the cause of death would be blunt force trauma to the head.

Q. . . . And that relates to that motor vehicle collision October 11, 2020?

A. That's correct.

The district court received Martin's death certificate, which was a form completed by a nurse. The form defined the deceased's "immediate cause of death" as the "[f]inal disease or condition resulting in death." Martin's death certificate listed his immediate cause of death as "Sepsis," due to or as a consequence of "Ischemic Bowel" and "Small Bowel Obstruction." The death certificate noted, "History Traumatic Brain Injury, Tracheotomy" as "OTHER SIGNIFICANT CONDITIONS—Conditions contributing to the death but not resulting in the underlying cause." The form had a section to provide details if the death was caused by a transportation injury, but that section was left blank.

On cross-examination, Bowen acknowledged that he was not directly involved in Martin's care, that an autopsy was not performed on Martin, and that his death certificate listed the causes of death as "Sepsis," due to "Ischemic Bowel" and "Small Bowel Obstruction." On redirect, however, Bowen explained that the cause of death listed on the death certificate did not change his opinion about Martin's cause of death. He testified that the conditions referenced by the hospice nurse in the death certificate were the conditions Martin was suffering from at the time of his death. Over Lewis' foundation objections, which she based on the premise that Bowen was not involved in Martin's care, Bowen opined that the conditions referenced in the death certificate were caused by the collision. Bowen reiterated that, in his opinion, the traumatic brain injury was the proximate cause of these conditions that led to Martin's death.

The district court found Lewis guilty of motor vehicle homicide/DUI.

## 5. Verdict and Sentencing on Remand

Lewis subsequently filed a motion to vacate her conviction. She alleged that DUI/serious bodily injury is a

lesser-included offense of motor vehicle homicide/DUI, because the State would have to prove the elements of the lesser offense to prove the greater offense. Therefore, Lewis asserted, punishment for motor vehicle homicide/DUI would be an impermissible cumulative punishment in a separate and successive action, in violation of double jeopardy protections.

Following a hearing, the district court overruled the motion to vacate. It found our opinion in *Lewis I* dispositive on the issue. The district court reasoned that because *Lewis I* established that double jeopardy was not violated by the subsequent prosecution for motor vehicle homicide/DUI, a sentence for that offense would be appropriate.

At the sentencing hearing, just prior to imposing the sentence, the district court mentioned that Lewis had already been sentenced to a term of imprisonment and post-release supervision for serious bodily injury/DUI. It also noted that this was "a very unusual case because of the issues of double jeopardy." The district court then sentenced Lewis for motor vehicle homicide/DUI to 48 months' probation, with terms and conditions that included a 3-year revocation of Lewis' driver's license. The district court ordered this sentence to run concurrently with any other sentence being served at that time.

Lewis again moved to vacate the judgment after sentencing on the theory that double jeopardy protections prohibited it. The district court overruled the motion.

Lewis filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

Lewis assigns that the district court erred in (1) admitting Bowen's opinion about Martin's cause of death; (2) overruling her motions to dismiss and for directed verdict, which she based on the theory that there was insufficient evidence her unlawful conduct caused Martin's death; and (3) overruling

Lewis' motions to vacate her conviction and sentence on the ground that they violate her double jeopardy rights.

## III. STANDARD OF REVIEW

[1] An appellate court reviews a trial court's ruling to admit or exclude an expert's testimony for abuse of discretion. *State v. Woolridge-Jones*, 316 Neb. 500, 5 N.W.3d 426 (2024).

[2] Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Hassan*, 309 Neb. 644, 962 N.W.2d 210 (2021).

[3] Whether two convictions result in multiple punishments for the same offense for double jeopardy purposes presents a question of law, on which an appellate court reaches a conclusion independent of the court below. *State v. Ballew*, 291 Neb. 577, 867 N.W.2d 571 (2015).

## IV. ANALYSIS

### 1. Cause of Death Testimony

Lewis mounts two challenges on appeal related to Bowen's testimony that the collision caused Martin's death. First, she claims that Bowen's opinion on that point was inadmissible. Second, she contends that Bowen's testimony was insufficient to establish that her unlawful conduct caused Martin's death. We find both arguments lack merit.

### (a) Admissibility

We first address the issue of admissibility. Lewis pinpoints Bowen's testimony concerning Martin's cause of death, quoted

above. Lewis argues that the district court abused its discretion in allowing Bowen to give that expert testimony.

Martin's cause of death was a fact in issue in the prosecution for motor vehicle homicide/DUI, see § 28-306(1), and the State called Bowen to testify as an expert on that issue. Expert testimony is governed by Neb. Rev. Stat. § 27-702 (Reissue 2016): "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Lewis argues on appeal that Bowen's testimony was not admissible expert testimony. She points to the four preliminary questions that must be answered in order to determine whether an expert's testimony is admissible: (1) whether the witness qualifies as an expert pursuant to § 27-702; (2) whether the expert's testimony is relevant; (3) whether the expert's testimony will assist the trier of fact to understand the evidence or determine a controverted factual issue; and (4) whether the expert's testimony, even though relevant and admissible, should be excluded in light of Neb. Rev. Stat. § 27-403 (Reissue 2016) because its probative value is substantially outweighed by the danger of unfair prejudice or other considerations. See *State v. Woolridge-Jones*, 316 Neb. 500, 5 N.W.3d 426 (2024). Lewis claims that Bowen's testimony fails on each question, but she did not object on these grounds at trial.

Instead, Lewis lodged, at most, a general foundation objection, which did not squarely preserve the four preliminary questions above for consideration on appeal. See *State v. Childs*, 309 Neb. 427, 960 N.W.2d 585 (2021) (objection, based on specific ground and properly overruled, does not preserve question for appellate review on any other ground). See, also, *Gittins v. Scholl*, 258 Neb. 18, 601 N.W.2d 765 (1999) (on issue of necessity of medical expenses, objection based on physician's lack of familiarity with entirety

of patient's treatment was general foundation objection, not § 27-702 objection); *State v. Bideaux*, 219 Neb. 718, 365 N.W.2d 830 (1985) (general objection as to foundation to question requesting opinion of witness does not reach issue of qualification of witness as expert; opposing counsel are entitled to know that objection goes to qualifications of witness as expert, rather than to factual foundation for opinion). We say that Lewis, *at most*, lodged a general foundation objection because, as reflected above, Lewis did not even reference foundation when the State asked the question that immediately preceded Bowen's opinion about the cause of Martin's death. But even assuming that Lewis has adequately preserved an argument that Bowen's opinion lacked proper foundation, that argument would lack merit.

We have recognized that expert testimony should not be received if it appears the witness is not in possession of such facts as will enable him or her to express a reasonably accurate conclusion, as distinguished from mere guess or conjecture. See *State v. Woolridge-Jones, supra*, citing *Scurlocke v. Hansen*, 268 Neb. 548, 684 N.W.2d 565 (2004). Even if an expert possesses specialized knowledge, his or her testimony is properly excluded if the record does not support a finding that the expert had a sufficient foundation for his or her opinion. *Id.*

Neb. Rev. Stat. § 27-703 (Reissue 2016) addresses the facts upon which an expert witness may rely. It states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

§ 27-703. We have reasoned that § 27-703 allows a physician to provide a medical opinion based on medical records of other providers. See, e.g., *State v. Allen*, 314 Neb. 663, 992 N.W.2d

712 (2023), *modified on denial of rehearing* 315 Neb. 255, 995 N.W.2d 446, *cert. denied* ___ U.S. ___, 144 S. Ct. 1070, 218 L. Ed. 2d 248 (2024); *State v. Pruett*, 263 Neb. 99, 638 N.W.2d 809 (2002); *Gittins v. Scholl, supra*; *Gibson v. City of Lincoln*, 221 Neb. 304, 376 N.W.2d 785 (1985). Any lack of firsthand knowledge goes to the weight of the opinion. See, *State v. Allen, supra*; *State v. Pruett, supra*; *Gibson v. City of Lincoln, supra*.

We recently applied § 27-703 to a situation much like this one. In *Allen*, we held that a "'lack of personal knowledge (foundation)'" was not a basis for excluding a forensic pathologist's opinion testimony about the victim's cause of death, which the pathologist based on her review of autopsy reports and photographs, crime scene investigators' reports and photographs, and medical records and reports. 314 Neb. at 694, 992 N.W.2d at 734. See, also, *State v. Pruett, supra* (holding that trial court did not err in admitting, over hearsay objections, pathologist's cause-of-death opinion based on autopsy reports, photographs, and tissue sections produced by another physician). We explained that under § 27-703, admissible expert opinion testimony did not have to be based on firsthand knowledge. We further reasoned that there had been no allegation that the facts and data relied upon were not the kind reasonably relied upon by experts in the field of pathology. This stands in contrast to the case Lewis relies on, *Stukenholtz v. Brown*, 267 Neb. 986, 679 N.W.2d 222 (2004), where we held that a physician assistant's testimony regarding the cause of an injury lacked foundation because it was based on reports from professionals in other fields and the proponent did not show that the witness was familiar with those specialties and the treatment provided.

In light of the foregoing authority, we conclude that Bowen's testimony about Martin's cause of death was admissible pursuant to § 27-703, notwithstanding Bowen's reliance on medical records. It is undisputed that Bowen did not

have personal knowledge of Martin's medical condition. But Lewis makes no argument that the medical records Bowen relied upon were not the kind of facts and data reasonably relied upon by experts in Bowen's field. And, in fact, Bowen testified that he occasionally reviewed medical records to determine causes of death. We discern no abuse of discretion by the district court in admitting Bowen's opinion about Martin's cause of death.

(b) Sufficiency of Evidence

Having established that Bowen's testimony was admissible, we take up Lewis' argument that the evidence was insufficient to convict her of motor vehicle homicide/DUI. "A person who causes the death of another unintentionally while engaged in the operation of a motor vehicle in violation of the law of the State of Nebraska or in violation of any city or village ordinance commits motor vehicle homicide." § 28-306(1). See, also, § 28-306(3)(b) (if "proximate cause" of death was operation of motor vehicle in violation of § 60-6,196, motor vehicle homicide is Class IIA felony). Lewis challenges a single element of this offense: She submits that there was insufficient evidence to prove that the collision that resulted from her unlawful conduct on October 11, 2020, proximately caused Martin's death. We understand her to argue that Bowen's testimony was the only evidence of causation and that it was insufficient. We disagree.

In positing that Bowen's testimony was insufficient evidence of causation, Lewis again asserts Bowen's opinion was not based on his personal knowledge. We have already concluded that this did not render Bowen's causation testimony inadmissible. And to the extent that Lewis uses Bowen's lack of personal knowledge to attack the weight and credibility of his opinion, we observe that it is not this court's role to pass on the credibility of witnesses or reweigh the evidence; such matters are for the finder of fact. See *State v. Hassan*, 309

Neb. 644, 962 N.W.2d 210 (2021). See, also, *State v. Allen*, 314 Neb. 663, 992 N.W.2d 712 (2023), *modified on denial of rehearing* 315 Neb. 255, 995 N.W.2d 446, *cert. denied* ___ U.S. ___, 144 S. Ct. 1070, 218 L. Ed. 2d 248 (2024) (expert's lack of firsthand knowledge in giving testimony pursuant to § 27-703 goes to weight of expert's opinion). Accordingly, we decline to consider any weight and credibility arguments in assessing the sufficiency of the evidence.

[4] Lewis was convicted of felony motor vehicle homicide/ DUI under § 28-306(3)(b), which requires that the unlawful conduct be the "proximate cause" of the death. As a general matter, to say one event proximately caused another is a way of making two separate but related assertions: First, it means the former event caused the latter; second, it means that it was not just any cause, but one with a sufficient connection to the result. *State v. Irish*, 292 Neb. 513, 514, 873 N.W.2d 161, 164 (2016). With this understanding of proximate cause in mind, we conclude that the State presented sufficient evidence that the collision that resulted from Lewis' unlawful conduct on October 11, 2020, caused Martin's death.

Bowen opined, based on his training and experience as a pathologist and on his review of Martin's medical records, that Martin's death was directly related to the injuries he sustained in the crash and that the cause of death was blunt force trauma to the head. Thus, Bowen provided evidence that the collision caused Martin's death.

Lewis appears to suggest that Bowen's testimony was insufficient to prove that the collision caused Martin's death because Bowen did not adequately explain other possible causes, particularly the causes listed on Martin's death certificate. In support of this argument, Lewis relies on *Doe v. Zedek*, 255 Neb. 963, 587 N.W.2d 885 (1999). In *Zedek*, a plaintiff sued a doctor for medical malpractice in treating her in a hospital after a sexual assault that also occurred in the hospital. We observed that the subjective injuries

stemming from the claimed malpractice presented medically complicated questions requiring expert testimony. A witness testified that it was "'possible'" that the plaintiff suffered injuries from "'what happened to [her] *at the hospital*.'" *Id.* at 975, 587 N.W.2d at 893, 894 (emphasis in original). We observed that this testimony did not distinguish the damages caused by the claimed malpractice from the damages caused by other factors, such as the sexual assault itself. Because this shortcoming in the expert testimony required the trier of fact to impermissibly arrive at its conclusions by guess, speculation, conjecture, or choice of possibilities, we held that the trial court erred by not granting the defendant a directed verdict.

Lewis contends that, similar to *Zedek*, the issue of causation in this case presented medically complicated questions, and the death certificate offered causes of death other than the traffic accident, causes that Lewis claims Bowen explained only with speculation. But Lewis' reliance on *Zedek* does not sway us from our conclusion that the evidence here was sufficient to show the collision involving Lewis caused Martin's death. Bowen acknowledged that Martin's death certificate listed the causes of death as "Sepsis," due to "Ischemic Bowel" and "Small Bowel Obstruction." This did not change his opinion about Martin's cause of death. He explained that those were the conditions Martin was suffering from at the time of his death, but it was Bowen's opinion that those conditions, which caused his death, were caused by the collision. Bowen then repeated that it was his opinion that the traumatic brain injury was the proximate cause of the conditions that led to Martin's death.

Unlike the choice of possibilities for causation that resulted from the testimony in *Zedek*, Bowen's testimony definitively linked the conditions that caused Martin's death to one root cause: the collision. Bowen's opinion was not necessarily inconsistent with the causes of death identified on Martin's

death certificate by the hospice nurse, but even if it was, the district court apparently gave Bowen's opinion more weight and credibility, which was the district court's province to do. See *State v. Hassan*, 309 Neb. 644, 962 N.W.2d 210 (2021). Thus, the district court did not err in finding that the State's proof on the element of causation was sufficient to support Lewis' conviction for motor vehicle homicide/DUI.

### 2. Double Jeopardy

We now turn to Lewis' argument that the district court erred by denying her motions to vacate her conviction and sentence on the grounds that she had been subjected to multiple punishments in violation of her double jeopardy rights. Before diving into the parties' positions on this issue, we believe it helpful to provide some basic background regarding double jeopardy principles and our earlier opinion in *Lewis I.*

### (a) Background on Double Jeopardy and *Lewis I*

The Fifth Amendment to the U.S. Constitution provides in relevant part that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." Similarly, article I, § 12, of the Nebraska Constitution provides, "No person shall be . . . twice put in jeopardy for the same offense." Both this court and the U.S. Supreme Court have recognized that the respective Double Jeopardy Clauses of the U.S. and Nebraska Constitutions protect against three distinct abuses: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. See *Lewis I, supra*. But see *Department of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994) (Scalia, J., dissenting) (arguing that Double Jeopardy Clause prohibits successive prosecutions but not multiple punishments). Indeed, we have held that the protection granted by the Nebraska Constitution against double jeopardy is coextensive

to the protection granted by the U.S. Constitution. See, e.g., *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020). Because we have treated the Double Jeopardy Clause in the Nebraska Constitution as coextensive with its federal counterpart and the parties make no argument for any other treatment, we will not separately analyze Lewis' claims under the federal and state Double Jeopardy Clauses.

In Lewis' plea in bar, she claimed that the motor vehicle homicide/DUI prosecution violated the second aspect of the double jeopardy clause mentioned above: the protection against a second prosecution for the same offense after a conviction. She argued that after her conviction for DUI/serious bodily injury, the State could not pursue a successive prosecution for motor vehicle homicide/DUI because it was a second prosecution for the same offense. We rejected that argument, finding that, under *Diaz v. United States*, 223 U.S. 442, 32 S. Ct. 250, 56 L. Ed. 500 (1912), the State could prosecute Lewis for motor vehicle homicide/DUI despite having previously convicted her of DUI/serious bodily injury. As noted above, we reasoned that *Diaz* applied because at the time Lewis was charged and convicted of DUI/serious bodily injury, Martin had not yet died and thus the State could not pursue charges of motor vehicle homicide/DUI.

Because Lewis had not yet been convicted of motor vehicle homicide/DUI at the time we decided *Lewis I*, she did not argue in that appeal, and we had no reason to consider, whether a conviction for motor vehicle homicide/DUI would implicate the third aspect of double jeopardy--multiple punishments for the same offense. After Lewis was convicted of motor vehicle homicide/DUI, however, she asked the district court to vacate that conviction and sentence on the grounds that she had been subjected to multiple punishments for the same offense in violation of double jeopardy principles. The district court denied that motion. Lewis argues on appeal that was error. She asks us to find that she has been subjected to multiple punishments

for the same offense and that the district court should have vacated her conviction and sentence for motor vehicle homicide/DUI. The State denies that Lewis' convictions and sentences for both DUI/serious bodily injury and motor vehicle homicide/DUI resulted in impermissible multiple punishments.

We next summarize the parties' arguments in favor of their respective positions.

### (b) Parties' Arguments Regarding Multiple Punishments

According to Lewis, this case presents a textbook example of a defendant being punished twice for the same offense. Lewis argues that the appropriate test to determine whether DUI/serious bodily injury and motor vehicle homicide/DUI are the same offense is the test announced by the U.S. Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct 180, 76 L. Ed. 306 (1932). In *Blockburger*, the Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304. Lewis argues that DUI/serious bodily injury is a lesser-included offense of motor vehicle homicide/DUI and thus the offenses are the same under *Blockburger*. And because the offenses are the same, she contends, double jeopardy principles prohibit her from being punished for both serious bodily injury/DUI and motor vehicle homicide/DUI.

The State disagrees with Lewis' contention that this case turns on the application of *Blockburger*. In fact, in this appeal, the State does not even challenge Lewis' assertion that the offenses are the same pursuant to *Blockburger*. Instead, the State argues that even if the offenses are the same under *Blockburger*, there is no multiple punishments problem in this case. In support, the State directs us to *Missouri v. Hunter*, 459 U.S. 359, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983).

In *Hunter*, a defendant who robbed a supermarket at gunpoint was convicted of robbery and violating a Missouri statute that criminalized armed criminal action. The U.S. Supreme Court reversed a Missouri appellate court that concluded that the two convictions subjected the defendant to multiple punishments in violation of his double jeopardy rights. The U.S. Supreme Court explained that the Missouri legislature specifically authorized cumulative punishment for violation of the robbery and armed criminal action statutes and that where a legislature does so, "regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. at 368-69.

The State goes on to argue that this court has relied on the reasoning employed in *Hunter* to reject a claim that a defendant had been subjected to impermissible multiple punishments in violation of double jeopardy principles. The State directs us to *State v. McBride*, 252 Neb. 866, 567 N.W.2d 136 (1997). In *McBride*, a defendant was convicted of discharge of a firearm and use of a firearm to commit a felony. Even though one offense was a lesser-included offense of the other, we found the defendant did not face multiple punishments in violation of double jeopardy principles. We relied on the fact that a statute provided that using a deadly weapon to commit a felony was to be treated as a separate and distinct offense from the underlying felony and that sentences for that offense were to be consecutive to any other sentence imposed. Because the Legislature intended that "one using a deadly weapon be subjected to cumulative punishments for committing the underlying felony and for the use of a weapon to commit it," we found that the defendant was not subjected to cumulative punishment in violation of his double jeopardy rights. *Id.* at 882, 567 N.W.2d at 147. See,

also, *State v. Mata*, 273 Neb. 474, 730 N.W.2d 396 (2007) (employing same reasoning to reject multiple punishments double jeopardy claim).

The State argues that the statutes defining DUI/serious bodily injury and motor vehicle homicide/DUI both have language, like that relied upon in *McBride*, demonstrating the Legislature intended to allow cumulative punishments for those offenses. The statutes contain identical language that provides that "[t]he crime punishable under this section shall be treated as a separate and distinct offense from any other offense arising out of acts alleged to have been committed while the person was in violation of this section." See § 28-306(4) and Neb. Rev. Stat. § 60-6,198(4) (Reissue 2021).

Lewis does not dispute that the language quoted above demonstrates that the Legislature intended to allow cumulative punishments for DUI/serious bodily injury and motor vehicle homicide/DUI. And given the similarity between the language in the DUI/serious bodily injury and motor vehicle homicide/ DUI statutes on the one hand and the language that we found demonstrated an intent to permit cumulative punishment in *State v. McBride, supra*, on the other hand, any such argument by Lewis would fail. The Legislature has clearly demonstrated an intent to allow cumulative punishments for DUI/serious bodily injury and motor vehicle homicide/DUI.

Although Lewis does not challenge the State's argument that the Legislature has clearly authorized cumulative punishment for DUI/serious bodily injury and motor vehicle homicide/ DUI, she nonetheless maintains that she has been subjected to impermissible multiple punishments in violation of her double jeopardy rights. She argues that the *Hunter* test—that a multiple punishments claim is evaluated by determining whether statutes evidence a clear legislative intent to permit cumulative punishment—applies only if those cumulative punishments are pursued in a single proceeding.

And, it must be acknowledged, there is language in *Hunter* itself and in several other cases that followed it that refers

to cumulative punishments being permitted if imposed in a single proceeding. See *Missouri v. Hunter*, 459 U.S. at 366 ("[w]ith respect to cumulative sentences *imposed in a single trial*, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended") (emphasis supplied). See, also, *Department of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 778, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994) (noting that state could assess tax on possession of marijuana "if it had assessed the tax *in the same proceeding* that resulted in his conviction") (emphasis supplied); *State v. Mata*, 273 Neb. at 480-81, 730 N.W.2d at 401 ("[w]hen the Legislature has demonstrated an intent to permit cumulative punishments, the Double Jeopardy Clause is not violated as long *as long as the court imposes the cumulative punishments in a single proceeding*") (emphasis supplied); *State v. Detweiler*, 249 Neb. 485, 496, 544 N.W.2d 83, 91 (1996) ("[i]f the legislature intended that defendants be punished cumulatively under both charges *and the sentences for both charges are imposed in a single trial*, the Double Jeopardy Clause is not offended") (emphasis supplied).

Because in this case Lewis faced multiple prosecutions, first for DUI/serious bodily injury charges and then, after Martin died, for motor vehicle homicide/DUI charges, Lewis argues that the *Hunter* test should never come into play.

At oral argument, the State acknowledged that *Hunter* and cases following it refer to cumulative punishments being permitted if pursued in a single proceeding. Counsel for the State argued, however, that, at least in this case, where the State could not charge Lewis with motor vehicle homicide/DUI at the time she was charged and convicted of DUI/serious bodily injury because Martin had not yet died, the fact that the State initiated successive prosecutions does not preclude application of the *Hunter* test.

The parties' arguments and concessions frame for us a double jeopardy question that is quite narrow. Because the

question is so narrow, it will take us more than a few lines of text to lay it out. The question is this: Can a defendant be punished for two crimes, even if they qualify as the same offense under the *Blockburger* test, when the Legislature has clearly authorized cumulative punishment for the crimes but the convictions are obtained in successive prosecutions, because facts necessary to obtain one of the convictions had not yet occurred at the time of the first prosecution? Or, phrasing the question somewhat more concisely and with references to relevant U.S. Supreme Court precedent, can the *Hunter* test be applied when the punishments are obtained in successive criminal prosecutions if the second prosecution is permitted by *Diaz*? We analyze that question below.

### (c) Multiple Punishments Analysis

Because we have concluded above that the Legislature has clearly authorized cumulative punishments for DUI/serious bodily injury and motor vehicle homicide/DUI, *Hunter* would have allowed Lewis to be convicted of and punished for both offenses if the State had pursued them in a single proceeding. Lewis does not seriously dispute that point in this appeal. Instead, she argues that she has received multiple punishments in violation of her double jeopardy rights because her convictions were obtained in successive proceedings. We disagree for reasons we will explain.

First, *Diaz* itself provides some indication that Lewis has not been subjected to impermissible multiple punishments. Readers of *Lewis I* will remember that *Diaz* involved a defendant in the Philippines (when it was a U.S. territory) who physically attacked a victim and was convicted and sentenced for misdemeanor assault and battery. When the victim later died from his injuries, homicide charges were brought against the defendant. After he was convicted and sentenced for homicide, he unsuccessfully appealed to the Supreme Court of the Philippines. The case then made its way to the U.S. Supreme Court. The U.S. Supreme Court

found no double jeopardy violation, pointing out that at the time of the trial for the assault and battery, the death had not yet occurred. Only once the death occurred, the U.S. Supreme Court reasoned, "was it possible to put the accused in jeopardy" for the homicide. *Diaz v. United States*, 223 U.S. 442, 449, 32 S. Ct. 250, 56 L. Ed. 500 (1912).

Although we relied on *Diaz* in *Lewis I* to conclude that *a second prosecution* was permitted, *Diaz* also, at least arguably, suggests that impermissible multiple punishments are not imposed if a defendant is convicted and sentenced for homicide charges in a situation like that in *Diaz* and this case. *Diaz* involved an appeal after the defendant had been convicted and sentenced for the homicide charges, and yet, the U.S. Supreme Court found no double jeopardy problems with the homicide conviction or sentence. Furthermore, based on its language, the U.S. Supreme Court appeared to conclude that, under the circumstances, the defendant had not been previously put in jeopardy for the homicide charges and thus the Double Jeopardy Clause simply was not implicated.

If *Diaz* alone were not enough, a more recent U.S. Supreme Court opinion, *Garrett v. United States*, 471 U.S. 773, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985), more clearly demonstrates that Lewis has not been subjected to multiple punishments in this case. In *Garrett*, the defendant entered a guilty plea to one count of importation of marijuana in a Washington federal court and was convicted and sentenced. Later, the defendant was charged in a Florida federal court for various charges, including engaging in a continuing criminal enterprise. The continuing criminal enterprise charge required prosecutors to prove, among other things, that the defendant had committed a continuing series of crimes with a single or similar purpose. In the trial in Florida, prosecutors introduced evidence of the defendant's drug smuggling operation in Washington to prove the predicate acts for engaging in a continuing criminal enterprise. The defendant was convicted of engaging in a continuing criminal enterprise. The

case eventually reached the U.S. Supreme Court, where the defendant argued that the Florida trial was an impermissible successive prosecution and that he had impermissibly been subjected to multiple punishments by being sentenced for both importation of marijuana and engaging in a continuing criminal enterprise.

The U.S. Supreme Court in *Garrett* rejected both arguments. With respect to the defendant's successive prosecution argument, the Court found that even assuming the Washington offense was a lesser-included offense of engaging in a continuing criminal enterprise, the second prosecution was permitted. The Court relied on *Diaz* for this conclusion. It pointed to evidence that the defendant was engaging in drug smuggling after he had been charged in Washington and determined that, as in *Diaz*, the second offense for engaging in a continuing criminal enterprise was not yet completed at the time of the first prosecution.

The U.S. Supreme Court in *Garrett* then went on to determine whether the defendant had been subjected to impermissible multiple punishments under the Double Jeopardy Clause. The Court made short work of this issue. It first quoted *Hunter* to say that, with respect to multiple punishments, "'the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Garrett*, 471 U.S. at 793, quoting *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 535 (1983). It then found that Congress intended to permit cumulative sentences for engaging in a continuing criminal enterprise and the underlying predicate offenses.

The U.S. Supreme Court's resolution of the successive prosecution and multiple punishments arguments in *Garrett* supports the State's argument that Lewis was not subjected to impermissible multiple punishments in this case. The U.S. Supreme Court initially concluded that successive prosecutions were permitted in *Garrett* because *Diaz* applied. It then determined that the defendant could be subjected to

cumulative punishments under *Hunter* because there was clear congressional intent to permit cumulative punishment. And the Court concluded that cumulative punishment was permissible notwithstanding the fact that the convictions at issue were obtained in successive prosecutions. The parallels with this case are obvious: We determined that this case is governed by *Diaz* in *Lewis I*, and we have determined in this appeal that the Legislature intended to allow cumulative punishment for DUI/serious bodily injury and motor vehicle homicide/DUI.

We are not the first state court of last resort to read *Garrett* in this way. In *People v. Harding*, 443 Mich. 693, 506 N.W.2d 482 (1993), *abrogated on other grounds, People v. Ream*, 481 Mich. 223, 750 N.W.2d 536 (2008), the Michigan Supreme Court confronted a case similar to this one. Following an armed robbery in which a victim was shot, defendants were charged and convicted of armed robbery and assault with intent to commit murder. Years later, after the victim had died and an autopsy revealed that the cause of death was the damage to his heart caused by the gunshot wound sustained during the robbery, the defendants were charged and convicted of felony murder. On appeal, defendants argued that their double jeopardy rights had been violated in two ways: because of the successive prosecution and because they received multiple punishments. The Michigan Supreme Court first concluded that the prosecution for felony murder did not violate double jeopardy protections, because at the time of the first prosecution, the victim had not yet died. In support, it cited *Diaz* and *Garrett*.

The Michigan Supreme Court went on to consider whether the defendants had been subjected to multiple punishments in violation of their double jeopardy rights. Citing *Garrett*, it concluded that the multiple punishments issue turned on whether the legislature intended to allow for the imposition of cumulative penalties. The court pointed out that although *Garrett* involved successive prosecutions, the U.S. Supreme

Court analyzed the multiple punishments question in that case by relying on "single prosecution-multiple punishments cases for the proposition that legislative intent controls the imposition of multiple penalties." *Harding*, 443 Mich. at 706, 506 N.W.2d at 489. And although the Michigan Supreme Court went on to find the defendants in *Harding* had been subjected to multiple punishments in violation of their double jeopardy rights, it did so based on its conclusion that the Michigan legislature did not intend to permit defendants to be punished for both felony murder and armed robbery or for both felony murder and assault with intent to murder. That final conclusion is of no assistance to Lewis because, as we have discussed, we conclude that the Nebraska Legislature did intend to permit cumulative punishment for DUI/serious bodily injury and motor vehicle homicide/DUI.

In the face of the U.S. Supreme Court's application of the *Hunter* test to analyze a multiple punishments claim in a *Diaz*-type successive prosecution case in *Garrett*, Lewis maintains that the language in *Hunter* and in its progeny that refers to its test applying when multiple charges are pursued in a single proceeding precludes application of the test in this case. We are not convinced.

In our view, *Hunter* did not announce a rule that its test can never apply when challenged multiple punishments are imposed after successive prosecutions. The reference to single proceedings in that case could be read to allude to the practical reality that, in most cases, prosecutors will not be able to obtain multiple punishments for the same conduct through multiple prosecutions because of the double jeopardy protection from *successive prosecutions*. That is how Justice Scalia appeared to understand the language in *Hunter*. He remarked in a dissenting opinion in *Department of Revenue of Mont. v. Kurth Ranch* that "the Double Jeopardy Clause's ban on successive criminal prosecutions would make surplusage of any distinct protection against additional punishment imposed in a *successive prosecution*, since the prosecution

*itself* would be barred," and then in a footnote, he cited the *Hunter* test, complete with a reference to "legislatively authorized multiple punishments" being permitted "in a single proceeding" but not in "successive proceedings." *Department of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 801 & n.1, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994) (Scalia, J., dissenting) (emphasis in original). On that understanding, the language in *Hunter* referring to single proceedings would not aid Lewis, since we already determined in *Lewis I* that a successive prosecution was permitted.

We recognize that Justice Scalia was not in the majority in *Kurth Ranch* and, indeed, at oral argument, Lewis argued that the majority opinion in *Kurth Ranch* supported her contention that the *Hunter* test cannot apply in a successive prosecution case. We remain unpersuaded. In *Kurth Ranch*, the U.S. Supreme Court found that Montana could not assess a tax on the possession of illegal drugs after it had obtained criminal convictions for possession of the same drugs and, in doing so, observed that the state could have assessed the tax if it had done so "in the same proceeding that resulted in . . . conviction." 511 U.S. at 778. The Court's conclusion in *Kurth Ranch* that the defendants' double jeopardy rights were violated hinged on its finding that the tax was punitive rather than criminal, an approach to double jeopardy the U.S. Supreme Court would backtrack from a few years later in *Hudson v. United States*, 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997). But even setting aside the effect *Hudson* may have had on the continued vitality of *Kurth Ranch*, *Kurth Ranch* was not a case like *Diaz* or *Garrett* or this one, in which the second proceeding could not have been pursued at the time of the first, because facts necessary to the charges pursued in the second proceeding had not yet occurred. As we have explained, we read *Garrett* to permit application of the *Hunter* test in that scenario, and nothing in *Kurth Ranch* or any other case we have found calls that into question. At a minimum, the *Hunter* language referring to a single

proceeding appears subject to an exception in cases in which *Diaz* applies.

Finally, and perhaps more simply, if the U.S. Supreme Court's guidance in *Hunter* and *Diaz* is viewed together, it is just difficult to understand why this would amount to a case in which impermissible multiple punishments were imposed. *Hunter* would allow the State to have obtained convictions and sentences for both DUI/serious bodily injury and motor vehicle homicide/DUI if it had pursued those charges in the same prosecution. And while the State did not pursue those charges in the same prosecution, it could not have prosecuted Lewis for motor vehicle homicide/DUI when it brought the DUI/serious bodily injury charges because Martin had not yet died, a set of circumstances in which successive prosecutions are permitted under *Diaz*.

To summarize, we hold that the *Hunter* test for analyzing claims that a defendant has been subjected to multiple punishments is properly applied in successive prosecution cases like this one in which the second prosecution is permitted by *Diaz*. Applying the *Hunter* test, we find that the Legislature specifically authorized cumulative punishment for DUI/serious bodily injury and motor vehicle homicide/DUI. Accordingly, Lewis has not been subjected to multiple punishments in violation of her double jeopardy rights.

### (d) Remedy for Multiple Punishments

Prior to concluding, we observe that even if Lewis were correct that she could not constitutionally be punished for both DUI/serious bodily injury and motor vehicle homicide/DUI, it is not clear to us that she sought an appropriate remedy in the district court or seeks an appropriate remedy on appeal. Lewis asked the district court to vacate her motor vehicle homicide/DUI conviction and sentence and argues on appeal that the district court erred in denying that motion.

An order vacating Lewis' conviction and sentence for motor vehicle homicide/DUI would seem to render our decision in

*Lewis I* essentially meaningless. In *Lewis I*, we held that the State could, consistent with double jeopardy protections, prosecute Lewis for motor vehicle homicide/DUI. There would be little point in allowing a second prosecution if it could not result in any conviction or a sentence. The Michigan Supreme Court concluded as much in *People v. Harding*, 443 Mich. 693, 506 N.W.2d 482 (1993), *abrogated on other grounds, People v. Ream*, 481 Mich. 223, 750 N.W.2d 536 (2008). There, the court expressly rejected the idea that it would be appropriate to remedy the impermissible multiple punishments problem present in that case by vacating the conviction obtained and sentence imposed in the second prosecution. As that court put it, such a remedy "would nullify the purpose of the constitutionally acceptable *Diaz* exception." *Harding*, 443 Mich. at 715, 506 N.W.2d at 493. The Michigan Supreme Court instead found that defendants were entitled to have the time they had served on their assault with intent to murder and armed robbery sentences credited toward their sentences for felony murder. See, also, *State v. Gardner*, No. 55171, 1989 WL 31142 at *1 (Ohio App. Mar. 30, 1989) (holding that under *Diaz*, defendant could be prosecuted for murder despite previous conviction for assault and battery, and noting that "[a]ny potential prejudice in the form of multiple punishments will be prevented by the requirement that [defendant] be given credit for time served").

In this case, Lewis never argued in the district court that she was entitled to credit for time she had served on her DUI/serious bodily injury sentence. Even so, the district court appeared, in some manner, to factor Lewis' prior service of time on her DUI/serious bodily injury sentence into its sentencing calculus for the motor vehicle homicide/DUI conviction. At the sentencing hearing, the district court mentioned that Lewis had already served time for her actions in the case, referenced "issues of double jeopardy," and ultimately imposed a probationary sentence for motor vehicle homicide/DUI after

earlier giving a sentence of incarceration for the less serious offense of serious bodily injury/DUI.

In the end, however, it is not necessary for us to determine what the appropriate remedy would be in a case in which a second conviction leads to impermissible multiple punishments. As we have explained above, we find that Lewis was not subjected to impermissible multiple punishments in this case.

## V. CONCLUSION

Because we find no error on the part of the district court, we affirm Lewis' conviction and sentence.

Affirmed.